IN THE

# SUPREME COURT OF NEBRASKA.

## JANUARY TERM, A. D. 1890.

PRESENT:

HON. AMASA COBB, CHIEF JUSTICE.
" SAMUEL MAXWELL, } JUDGES.
" T. L. NORVAL,

STATE, EX REL. JOHN McLANE, v. WELDON B.
COMPTON.

[FILED JANUARY 14, 1890.]

1. **School Districts**: CHANGE OF BOUNDARIES: PETITION RE-
   QUIRED. To give a county superintendent of schools jurisdic-
   tion to detach a part of the territory of a school district and
   attach the same to an adjoining district, a petition in writing,
   duly signed, must be presented to him for that purpose, and an
   oral request to perform such acts is not sufficient.

2. ——: ——: NOTICE REQUIRED. No change of this kind should
   be made without due notice being given of the time and place
   when a hearing will be had in the matter.

ERROR to the district court for Johnson county. Heard
below before APPELGET, J.

*S. P. Davidson*, for plaintiff in error:

Under sec. 4, subd. 1, chap. 79, Comp. Stats., a written petition was a jurisdictional requirement. (*State, ex rel. Donovan, v. Palmer*, 18 Neb., 644; *Cowles v. School District 23*, Id., 659.) So, also, is notice of time and place of changing boundaries. (*Windsor v. McVeigh*, 93 U. S., 274; 1 Herman, Estoppel, etc., p. 74.) The orders of a county superintendent, who acts outside of his jurisdiction, are subject to collateral attack.

*S. D. Porter*, for defendant in error:

Under the statute above cited, the action of the superintendent must be reviewed by appeal to the district court; not by original action or collateral attack. (*Brown v. Com'rs*, 6 Neb., 111–19.) He is an officer exercising judicial functions, and his action cannot be controlled by *mandamus*. (*Brown v. Com'rs, supra; State, ex rel. Shull, v. Clary*, 25 Neb., 603.) There is nothing to show that plaintiffs in error were authorized, at a district meeting, to bring this suit. Without such authority they have no legal capacity to sue. (*Bowen v. School District*, 10 Neb., 265.

MAXWELL, J.

This is an application for a *mandamus* to compel the defendant, as county superintendent of the public schools of Johnson county, to restore the boundaries of school district 43 of that county. A demurrer to the petition was sustained in the court below, and the action dismissed.

The relator alleges in the petition that "said relators are all legal voters of school district No. 43, in Johnson county, Nebraska, and that they constitute a large majority of the legal voters of said district, and that said district has been duly organized as such district for more than

fifteen years last past; that during the fifteen years last past, up to the commission of the wrongs by defendant mentioned, said district has been composed of sections 17, 18, 19, and 20, in town 4 north, of range 9 east in said county, and of no other lands or territory whatever; and that during all of said time, until the past summer, the school in said district has been situated only eighty rods west of the center thereof, but for several years last past and before the commission of the wrongs below mentioned said district has been trying to procure a site for and arrange to rebuild said school house at the center of said district, and during the summer of 1888 this object was attained, and said school house was removed to and rebuilt at the center of said district, where it now is; that at the time of the commission of the wrongs by defendant herein complained of said district was composed of the smallest extent of territory provided by law for any one district, while district No. 1, below mentioned, was composed of five and one-half sections of land, and included the village of Crab Orchard, a village of more than 200 inhabitants, in which also had been erected many and valuable store buildings and other business houses, and also included many large stocks of merchandise and other valuable personal property, while the said four sections, of which said district 43 was composed, were used exclusively for farming and grazing purposes, and contained only moderate improvements for such purposes. One J. S. Turner owns a large part of the northeast quarter of said section 17, and his house and buildings are situated upon the east half of the northeast quarter of the northeast quarter of said section 17, which is owned by him, and no stream or water-course intervenes between his said house or dwelling place and the said school house, either now or at any time, which renders it impracticable for his children to attend school in said district No. 43.

" That defendant is, and at the time of the commission of the wrongs complained of was, the acting superintendent of

schools in and for said county; that no petition was pre-
sented to him to change the boundaries of said district No.
43 or to detach any portion of the territory composing it
therefrom and attach it to district No. 1 in said county,
and no notice of any kind was ever given or served or
posted containing a statement of what changes were pro-
posed in said district boundaries, and of the time and place
when and where said petition would be presented to the
county superintendent.

"And no notice was ever given, posted, or served upon
any one showing when and where any request from said
Turner to be set off with any of his land from said
district No. 43 and attached to said district No. 1 would be
presented to and considered by said county superintendent,
and plaintiffs believe and aver that no such petition or re-
quest in writing was ever presented to and filed with said
defendant; that since the 1st day of April, 1888, and after the
assessors' books for said county had been issued to the several
assessors for the various precincts for the then ensuing year,
and said assessors had begun the work of making their
assessments for the year, without authority of law, in
violation of the plaintiff's rights in the premises and not
in good faith but in collusion with said Turner, this defend-
ant wrongfully changed the boundaries of said district No.
43 upon the map, showing the location and boundaries of
school districts in said county, by changing the lines of said
district 43 so as to show that the said east half of the
northeast quarter of the northeast quarter of said section
17 had been detached from said district No. 43 and at-
tached to said district No. 1, which is adjacent thereto, and
informed the county clerk and county treasurer of said
county of such attempted change, and that all uncollected
tax upon said land and property so detached should be
placed to the credit of said district No. 1, which is a school
district of said county.   By such unauthorized and illegal
conduct said defendant has wrongfully attempted to so

detach said property from said district No. 43 and attach the same to said district No. 1, and now asserts and claims that he has done so, and that said land and property so detached from said district No. 43 now belongs to and forms a part of said district No. 1.

"That said Frederick Kohn is treasurer, said John Redmond moderator, and said John Beal director of said district No. 43, and they heartily join with the other plaintiffs in prosecuting this petition for relief from said wrongs."

The question presented is, Did the defendant have jurisdiction to make the change in question? If so, then his action cannot be corrected by *mandamus.* If, however, the jurisdictional facts do not exist in the case, then his action in the premises is void and will be so declared by this court. Sec. 4, ch. 79, Comp. Stats. 1887, provides:

"New districts may be formed from other organized districts, and boundaries of existing districts may be changed under the following conditions only:

"First—It shall be the duty of the county superintendent to create a new district from other organized districts, upon a petition signed by one-half of the legal voters in each district affected.

"Second—The county superintendent shall have discretionary power to change the boundary of any district upon petitions signed by one-third of the legal voters in the district affected.

"Third—The county superintendent shall not refuse to change the boundary line of any district, or to organize a new district when he shall be asked to do so by a petition from each school district affected, signed by two-thirds of all the legal voters in such district. A notice of said petition, containing an exact statement of what changes in district boundaries are proposed and when the petition is to be presented to the county superintendent, shall be posted in three public places, one of which places shall be

upon the outer door of the school house, if there be one, in each district affected, at least ten days prior to the time of presenting the petition to the county superintendent; *Provided,* That changes affecting cities shall be made upon the petition of the board of education of the district or districts affected.

"Fourth—A list or lists of all the legal voters in each district affected, made under the oath of a resident of each district affected, together with an oath of a resident of each district that the legal notice provided in the third clause of this section has been properly posted, shall be given to the county superintendent when the petition is presented.

"Fifth—No new districts shall be formed between the first Tuesday of April and the first day of August.

"Sixth—No new districts shall be formed containing less than four sections of land, nor shall any district be reduced by division or otherwise so as to contain less than that amount, unless the district be so formed, or the part of a district remaining after division, shall have an assessed valuation of property of not less than $12,000. No district shall be formed extending more than six miles in any one direction upon section lines; *Provided,* That when streams or water-courses make it impracticable to form districts containing four sections, then the county superintendent may form districts with less than four sections, without regard to valuation.

"When streams of water make it impracticable for children to attend school in their own district, the county superintendent shall have authority, and it shall be his duty when requested by the parents of such children, to attach to adjoining districts such territory as he may deem necessary for the purpose of giving said children school privileges.

"Seventh—The county superintendent shall file in his office all petitions that have been granted for change of boundaries or for the formation of new districts, and such

petitions shall be *prima facie* evidence of the boundaries of districts; and all conflicting records of boundaries shall be made to correspond with the petitions so filed."

If the allegations of the petition are true, then the defendant, without a petition and without notice, changed the boundaries of the district. This he had no authority to do. A petition for changing the boundaries of a school district must be in writing, as it becomes a matter of record and the groundwork for the exercise of jurisdiction by the superintendent. Notice should also be given of any proposed changes and the time and place for hearing the same, so that those interested may have an opportunity to be heard and if necessary protect their rights by an appeal to the courts. Changes in the boundaries of a school district may seriously affect its prosperity, as by reducing the number of its scholars so low as to destroy emulation among them, or so to reduce the amount of taxable property therein as to prevent the school being sustained in a proper manner. Therefore, in order to secure a change in the boundaries of a district a petition duly signed by the requisite number of persons must be presented to the superintendent, and without such petition he has no authority to act.

If it be said that the statute does not in express terms require such petition to be in writing, the answer is, that such requirement is clearly implied, if not expressly provided for. It will be observed that under the provisions of the section quoted the boundaries of existing districts can be changed under the following conditions — *only:* First, by petition; second, by petition; and, third, by petition, of which notice shall be given, etc.

The duties of superintendent are alone those prescribed in the statute. His official acts, so far at least as district boundaries are concerned, determine what lands shall be included in a district, and hence taxable therein, and also who, as a matter of right, may attend school in the district. The case in some of its features resembles that of *State,*

*ex rel. Goff, v. Dodge County*, 20 Neb., 595, in which it was held that to justify the board of equalization in increasing the assessment of an individual a complaint in writing must be made. The reasons for this requirement are fully stated in that case and need not be repeated here. We adhere to that decision, however, and it is decisive of this case.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.