SCHOOL DISTRICT NUMBER TEN OF POLK COUNTY ET AL. V. J. H. COLEMAN ET AL.

FILED FEBRUARY 20, 1894.   No. 6023.

1. **Construction of Statutes.**   A proviso should be construed as referring to what immediately precedes it only, unless a different intention is apparent from the act itself.

2. **Schools:** DIVISION OF DISTRICTS BY COUNTY SUPERINTENDENT: NOTICE.  The proviso contained in the seventh paragraph of section 4, subdivision 1, of the general school law (ch. 79, Comp. Stats.) was intended to enlarge the powers of the county superintendent so as to authorize the creation of new districts in certain cases, containing less than six sections of land, and the changing the boundaries of existing districts without regard to the size of districts affected thereby, and is not authority for changing the boundary lines of districts in any case without the notice mentioned in paragraph number three of said section.

ERROR from the district court of Polk county.   Tried below before BATES, J.

*Sedgwick & Power* and *E. E. Stanton,* for plaintiffs in error.

*E. L. King, contra.*

POST, J.

This was a proceeding before the county superintendent of schools for Polk county under the provisions of section 4, subdivision 1, of the general school law (ch. 79, Comp.

Stats.).. The proceedings before the superintendent are
shown by his transcript as follows.:

"OSCEOLA, January 12, 1892.

"A verbal notice being given me by Thomas Record,
that a petition would be presented to me praying that sec-
tions 17 and 18, or parts thereof necessary to give school
privileges to petitioners of school districts 10 and 56,
Polk county, Nebraska, be detached from said districts and
annexed to school district No. 34 of Polk county, Ne-
braska, the 18th day of January was set for hearing said
petition.                         W. F. KEPNER,
                              *"County Superintendent.*

"January 18, the day set for hearing said petition. The
petition was presented, but not having all names desired on
petition, I set January 19 as time for hearing said petition
and prayer.                       W. F. KEPNER,
                              *"County Superintendent.*

"January 19, the day set for hearing said petition, the
following named persons, viz., Thomas Record, Joseph
Rosine, N. P. Johnson, appeared with petition signed by
Joseph Rosine, Anna Rosine, Milo Austin, Ellena Austin,
Nels P. Johnson, Josephine (her × mark) Johnson. The
substance and prayer of the petition was as follows:

"We, Nels P. Johnson and Josephine Johnson, Alma
Johnson, Mabel Johnson, Emil Johnson, and William
Johnson, and we, Ellena Austin and Milo Austin, parents
of Clide Austin, Charles Austin, Vinnie Irene Austin,
Alice Austin, Thomas Isaac Austin, and we, Joseph Rosine
and Annie Rosine, parents of Irene Edith Rosine, and I,
J. H. Coleman, parent of Chatta Coleman, would request
that you attach to the adjoining district No. 34 sections 17
and 18 in districts 10 and 56, or so much thereof as you
may deem necessary for the purpose of giving said children
school privileges, for the following reason: A stream flow-
ing through districts 56 and 10, known as the 'Blue River,'

makes it impracticable for their children to attend school in said districts, the school houses being on the north side of stream and they living on the south side of said stream.

"The undersigned persons, after being duly sworn before me, stated that the above statements are true and correct.

"THOMAS RECORD.
"JOSEPH ROSINE.
"N. P. JOHNSON.

"After due consideration of petition and prayer, I find in favor of petitioners, and that the cause is a just one, and hence the following decision :

"OSCEOLA, January 19, 1892.

"Joseph Rosine and Annie Rosine, Milo Austin, Ellena Austin, Nels P. Johnson and Josephine Johnson having certified before me this day that the Blue river makes it impracticable, during the wet season of the year, for their children to attend school in their own districts, Nos. 10 and 56 of Polk county, Nebraska, therefore, according to section 4, subdivision 1, of School Law, I have detached the following portion of land from district No. 56 of Polk county, Nebraska: E. $\frac{1}{2}$ of sec. 17, and from district No. 10 of Polk county, Nebraska, W. $\frac{1}{2}$ of sec. 17, E. $\frac{1}{2}$ sec. 18, and and E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ and E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of sec. 18, all of which is in twp. 13, range 2 W., and joined the same to district No. 34 of Polk county, Nebraska.

"W. F. KEPNER,
"County Superintendent.

"January 30, 1892.  Appeal bond filed and approved, and notice of appeal filed.      W. F. KEPNER,
"County Superintendent."

From this order in favor of the petitioners an appeal was taken by district No. 10 and certain resident taxpayers therein.  A trial was had in the district court and judgment entered substantially in accordance with the prayer of the petition, whereupon the cause was brought into this court for review by means of a petition in error.

Numerous reasons are assigned by plaintiffs in error for a reversal of the judgment, the first of which is the overruling of their objection to the introduction of evidence by the petitioners on the ground that the proceedings before the superintendent were without jurisdiction and void. The cause was tried in the district court without pleadings, upon the original petition. But the foregoing objection appears to have been construed by all parties as presenting the question of the jurisdiction of the persons of the appellants and also the sufficiency of the petition. The contention of plaintiffs in error is that notice of the proposed change of the boundaries of the several districts affected is indispensable in all cases, while defendants in error argue that notice is not essential where the change is rendered necessary on account of streams of water which prevent children residing in any district from attending school therein. The particular provision relied upon to sustain this contention is the last sentence of the seventh paragraph of the section above cited, as follows: "When streams of water make it impracticable for children to attend schools in their own district, the county superintendent shall have authority, and it shall be his duty when requested by the parents of such children, to attach to adjoining districts such territory as he may deem necessary for the purpose of giving said children school privileges." Prior to the amendment of the school law in 1885 the first sentence of section 4 read as follows: "New districts may be formed from other organized districts under the following conditions only." In the year last named said section was amended by the addition thereto, immediately following the word "district" in the provision quoted, of the following: "and boundaries of existing districts may be changed."

It will be observed that the law as thus amended, and which is still in force, in express terms prohibits any change in the boundaries of school districts except upon

the conditions named therein. Immediately following the limitation referred to it is provided: First—That the superintendent may in his discretion create new districts upon petition of one-third of the legal voters in each district to be affected thereby. Second—That he may in his discretion change the boundaries of existing districts upon petition of one-half of the legal voters of the districts affected thereby. Third—That he shall not refuse to change the boundary lines of existing districts or to form new ones when petitioned to do so by two-thirds of the legal voters of each district affected thereby; also, that "a notice of said petition, containing an exact statement of what changes in district boundaries are proposed, and when the petition is to be presented to the county superintendent, shall be posted in three public places, one of which places shall be on the outer door of the school house, if there be one in each district affected, at least ten days prior to the time of presenting the petition to the county superintendent; *Provided,* That changes affecting cities shall be made upon the petition of the board of education of the district or districts affected." Fourth—That districts may be divided or consolidated on certain conditions. Fifth—For a verified list of the legal voters in each district affected, also for proof of service of the notice provided for in paragraph number three. Sixth—That new districts shall not be formed between the first Tuesday of April and the first day of October. Seventh—That no new district shall contain less than four sections of land; "*Provided,* That when streams or water-courses make it impracticable to form districts containing four sections the superintendent may form districts with less than four sections without regard to valuation." This proviso was added to the section by the amendment of 1883 and was the first authority for new districts of less than six sections. But the prohibition against the change of boundary lines so as to reduce existing districts to less

than that amount of territory (except in the cases provided for in the original act) continued in force until the amendment of the section in 1885 by the addition thereto of the provision under consideration. The original provision for districts of not less than six sections was evidently intended as a limitation upon the discretion conferred upon the superintendent by the other provisions of the act. According to an elementary rule of construction a proviso will be confined in its application to what immediately precedes it, unless a different intention is apparent from the act itself. (Sedgwick, Construction of Statutory and Constitutional Law, p. 226, note; 23 Am. & Eng. Encyc. of Law, 436, and note.) The effect of the amendments of 1883 and 1885 was therefore to enlarge the powers of the superintendent so as to authorize the creation of new districts of less than six sections and to change the boundaries of existing districts where children are prevented by streams from attending school, without regard to the size of districts affected thereby. The amendment of 1885, like that of 1883, was intended merely as a modification of the restrictive language of the original act with respect to the size of districts and not to confer upon the superintendent jurisdiction to change district boundaries at will, and, as in this instance, without notice of any kind.

The several provisions cited, when read together, are susceptible of but one construction, viz., that the notice mentioned in the third paragraph of the section is an essential condition to the exercise of the jurisdiction conferred upon the county superintendent to change the boundaries of school districts. This case is therefore within the rule stated in *State v. Compton*, 28 Neb., 491, and *Dooley v. Meese*, 31 Neb., 428. Quite applicable in this connection is the language of the court in the last named case: "In controversies in regard to the boundaries of school districts, where it is sought to change the same, it must appear that the preliminary steps were taken not only by the presenta-

tion of the proper petitions, but by notice of the time and place of presenting the same. These notices should be placed in public places within each district to be affected, and if not so posted the proceedings will be invalid. The design of the notices is to give publicity to the proposed change so that all parties interested may appear in favor of or to oppose such change." It follows that in making the *ex parte* order changing the boundaries of the three districts named, the county superintendent exceeded his authority and that the objection should have been sustained. This conclusion renders an examination of the other questions presented unnecessary. The judgment of the district court is reversed and the action dismissed.

REVERSED.