IN RE ESTATE OF LIZZIE O'SHEA.

JOHN J. O'SHEA, APPELLEE, V. HENRY J. BREUNIG ET AL., APPELLANTS.*

FILED OCTOBER 9, 1909.   No. 15,670.

Executors and Administrators: WILLS:   ALLOWANCES TO SURVIVING SPOUSE.   Under the provisions of section 176, ch. 23, Comp. St. 1907. (Ann. St. 1907, sec. 4903), "all the wearing apparel and ornaments and household furniture," and other personal property, not exceeding $200 in value, of a deceased wife or husband vest in the survivor, as well when such survivor receives provision made in the will of the deceased as when the deceased died intestate, and the survivor cannot be deprived of the allowance thereof by the will of the deceased, nor can the survivor be required to elect whether he or she will accept other provisions of the will in his or her behalf before demanding the property described in the above section.

APPEAL from the district court for Platte county: GEORGE H. THOMAS, JUDGE.   *Affirmed.*

* Rehearing denied. See opinion, p. 521, *post.*

*P. E. McKillip* and *Albert & Wagner,* for appellants.

*John J. Sullivan, James G. Reeder* and *Louis Lightner,* contra.

REESE, C. J.

The appellee, O'Shea, is the surviving husband of Lizzie O'Shea, who died testate. He was her second husband, she having been previously married to C. D. Murphy, deceased. She had one son, Cyril Eugene Murphy, by her first husband. There was no issue of the second marriage. While there is nothing in the record disclosing the extent of her estate, the will, a copy of which is in the record, would seem to indicate that she died possessed of a considerable estate in her own right. She devised to her husband 200 acres of land in Boone county, and the undivided three-fourths of two quarter sections of land in Platte county in fee. She also bequeathed to him certain specified articles of personal property consisting of a part of her household goods and wearing apparel. Her piano and folding-bed she gave to the Franciscan Sisters of Charity of Humphrey, Nebraska. To the sisters of her former husband, Maggie and Nora Murphy, she bequeathed a diamond ring given her by him. To her sister, Maggie Anslme, she gave a specified ring, and to her niece, Isabel Breunig, another ring. To her son, Cyril Eugene Murphy, she left a portrait of his father, C. D. Murphy, a crayon portrait of his aunt, Nellie Murphy, and a specified oil painting. The ninth paragraph of the will provided: "All the rest of my household furniture, furnishings, carpets, chinaware, silverware, cutglass and paintings, I give and bequeath to my brothers and sisters (named in another paragraph of the will) to be divided equally amongst them," each to select the articles desired, but, if they were unable to agree as to the division, the executors were directed to divide the property into seven parcels of practically the same value, and lots should be cast for the same, respect-

ively. All the residue of her estate, real and personal, was devised and bequeathed to her son, Cyril Eugene Murphy. The husband was appointed as the guardian of Cyril, and was also nominated as an executor of the will with Henry Breunig. The will was admitted to probate in Platte county. The executors qualified and entered upon the duties of their appointment. O'Shea accepted the provisions of the will in his behalf. He then filed a complete inventory and appraisement "of all the wearing apparel and ornaments and household furniture and other personal property left by the deceased" which he claimed was allowed to him by law as the surviving husband, and the sum of $200 in money, amounting to a total of $1,996.50, and asked the county court to assign the same to him under the provisions of section 4903, Ann. St. 1907 (Comp. St. 1907, ch. 23, sec. 176). This included all the property specifically bequeathed to others. The county court rejected the claim, and O'Shea appealed to the district court, where the decision of the county court was reversed and the allowance made as claimed. The legatees appeal.

The law under which this claim is made is found in the first clause of the section referred to, which is as follows: "When any person shall die possessed of any personal estate or of any right or interest therein, not lawfully disposed of by his last will, the same shall be applied and distributed as follows: *First,* the surviving husband or wife, if any, and, if there be no surviving husband or wife, then the child or children, if any, of the deceased shall be allowed all the wearing apparel and ornaments an d household furniture of the deceased, and all the property and articles that was or were exempt to the deceased at the time of his or her death, from levy or sale upon execution or attachment, and other personal property, to be selected by her, him or them, not exceeding two hundred (200) dollars in value, and this allowance shall be made to such surviving husband or wife or child or children, if any, as well when he or she or they shall receive provision made in the will of the deceased as when the deceased dies in-

testate." O'Shea accepted the provisions of the will by which the land and specific personal property was given him, and it is claimed by the legatees that those provisions placed it within his election to take under the law or under the will, and that, having taken under the will, he could not demand all the personal property specified in the inventory submitted in addition; that it was clearly in contemplation of the testatrix that he should not have both, as the personal property—all of it—was specifically bequeathed to the legatees; and that, having elected, he is bound by his election and must abide by it. This contention is not disputed by appellee as a general proposition of law uninfluenced by legislative action, but it is insisted that the closing portion of the clause above quoted changes the rule, and, in effect, deprives a testator of the right or power to dispose of the property by will otherwise than as the law provides; that the provision that the allowance shall be made "as well when he * * * shall receive provision made in the will of the deceased as when the deceased dies intestate" precludes all idea of election and confers title as a legal right notwithstanding the other provisions of the will in his behalf.

There can be no doubt but that it was the intention of the testatrix that the provision made for her husband in the will was all that he should have of the estate. This is made doubly certain, if possible, by the specific bequests to her son, her sister, and relatives of the former husband of the enumerated articles. The only question, therefore, is as to her power to so dispose of her property. As we read the will, and observe that it confers upon the sisters of the deceased husband the ring given the testatrix by him, and to the son the portrait of his deceased father, the mind and conscience revolt and turn away from allowing the effort of appellee to thus ignore the expressed will of his deceased wife from whom he received such liberal provision. The will was, no doubt, made in the firm belief in the integrity of the husband and that he would respect her last wishes, and either decline to accept the provisions

made for him and take what the law gave him, or accept
those provisions as made. However, this seems to be one
of the cases where the provision of the statute may be
made to work a hardship and injustice, for there appears.
to be no escape from the language of the statute. Many
cases are cited by appellants holding that where one en-
titled to a benefit under a will must, if he claims such
benefit, abandon every right the assertion whereof would
defeat, even partially, any of the provisions of the instru-
ment, and that it is a maxim not to permit the same person
to hold under and against a will, and those rules are rec-
ognized and enforced in *Godman v. Converse,* 43 Neb. 463,
but in no case do we find the decision made in the face of a
statute similar to the one under consideration. Our at-
tention is called to section 4907, Ann. St. 1907, but we see
nothing in that section which would or could modify the
clause in section 4903, above quoted. That section simply
provides for election, we think, where the testator has the
power to dispose of the property, and the section must
be read in connection with section 4903 and the two con-
strued together. By so doing, the property to be allowed
the survivor is excluded from section 4907. Taking sec-
tion 4903 as it reads, and we cannot take it otherwise, it
seems to have been the purpose of the legislature to deprive
a testator of the right or power to dismantle the home or
any part thereof without the consent of the survivor. The
case of *Brichacek v. Brichacek,* 75 Neb. 417, while not
decided with reference to the sections under consideration,
might shed some light upon the views of the court upon
a similar contention. In that case the wife was the owner
of two 80-acre tracts of land, one of which was the family
homestead. By her will she devised the homestead to her
children and the other tract of land to her husband. He
accepted the provisions of the will, and claimed his home-
stead right of a life estate in the home and the fee title to
the other tract. We held that he was entitled to both, as
the law gave him his homestead right of which he could
not be divested except by his own act, and that there was

no requirement that he should elect, and that his accept-
ance was not an election. The principle involved in the
two cases is practically the same.

It follows that the judgment of the district court will
have to be affirmed, which is done.

AFFIRMED.

ROOT, J., concurring.

I concur in affirming the judgment of the lower court
for the reasons hereafter stated. O'Shea was claiming
property that descended absolutely to him upon the death
of his wife, notwithstanding her will. Ann. St. 1907, sec.
4903. Section 5065, Ann. St. 1907, directs executors as
well as administrators to make a separate and distinct
inventory and appraisement of the household furniture
and other personal property, which may be allowed the
widow, pursuant to the provisions of the chapter on de-
cedents, and provides that such chattels shall not be con-
sidered assets in the hands of those officers of the court.
Preceding 1901 the surviving wife, and not the husband,
was given the wearing apparel, ornaments, household fur-
niture, etc., of the deceased spouse. In 1901 the surviving
husband and wife were placed on an equality with respect
to said property (laws 1901, ch. 27), and the legislature
in 1907 (laws 1907, ch. 49) continued that policy. Section
5065, Ann. St. 1907, is identical with section 200, ch. 14,
Rev. St. 1866, and has never been amended. The fact that
the legislature has not amended the last cited statute so
as to specifically mention the surviving husband as well
as the wife does not make it inapplicable to the husband's
case. O'Shea, therefore, did not depend upon the will for
title to the property in dispute. *In re Estate of Fletcher,*
83 Neb. 156. The cited case was decided with reference to
the statute in force prior to the amendment of 1907, *supra,*
but it is somewhat in point.

Counsel for appellants argue with commendable learn-
ing the doctrine of election, but that principle does not

apply to the record in this case. O'Shea filed his separate inventory enumerating the articles and the $200 claimed by him under section 4903, *supra*. Appellants objected to the surviving spouse receiving that property because it had been bequeathed to other legatees by his deceased wife, and claimed that, as O'Shea had accepted the land devised to him by that instrument, he had elected to take thereunder, and must renounce all claim to the chattels. O'Shea stands in the same light as though he had owned the disputed chattels at the time of his wife's death. In that event, as in the instant case, by asserting title to the chattels under the law, he would be claiming against, not under, the will. In cases like the one at bar the doctrine of election is actually that of compensation. 1 Pomeroy, Equity Jurisprudence (3d ed.), secs. 467, 468, 469; 2 Story, Equity Jurisprudence (13th ed.), secs. 1085, 1086; *Rogers v. Jones*, 3 Ch. Div. (Eng.) 688; *Bigland v. Huddleston*, in note to *Freke v. Barrington*, 3 Brown Ch. (Eng.) *274, *286; *Carper v. Crowl*, 149 Ill. 465; *Williams v. Williams*, 5 Gray (Mass.) 24.

Judge Story, in 2 Equity Jurisprudence (13th ed.), sec. 1079, and note, p. 426, refers to the principles of the civil law which do not permit the beneficiary in a will to receive any advantage therefrom if he takes against it. Mr. Swanston in his note to *Gretton v. Haward*, 1 Swan. Ch. (Eng.) 409, 444, comments upon the difficulties that may arise in cases of election where a bequeathed chattel may possess a value peculiar to the individual because of associations, but concludes that, unless the difficulty is unsurmountable, the doctrine of compensation will apply.

To the writer it seems that O'Shea, in asserting his legal rights to the enumerated property and the $200, has irrevocably elected to take against the will, and to hold the land devised to him, in trust, as far as may be necessary to compensate the other legatees for their disappointment in not receiving said chattels and money. It goes without saying that a county court is without jurisdiction to declare and make that trust effective with relation to real

estate. There is nothing upon which the decree of the county court can operate to satisfy the appellants, unless it has the power to divert the husband's title to the chattels and vest it in the complaining legatees. I agree with the Chief Justice that the policy of this state, as evidenced by the will of the legislature, forbids that assumption of authority.

The decree of the district court reversing that of the county court and directing the delivery to O'Shea of the disputed chattels should be affirmed, but without prejudice to any proper action by appellants for compensation.

LETTON, J., concurs in these views.

FAWCETT, J., dissenting.

The statute under which O'Shea claims the right to hold the picture of his deceased wife's former husband, and the wedding ring which her former husband gave her, and other ornaments bequeathed by her to her personal relatives, is section 4903, Ann. St. 1907. It reads as follows: "When any person shall die possessed of any personal estate or of any right or interest therein, *not lawfully disposed of by his last will,* the same shall be applied and distributed as follows: First, the surviving husband or wife, if any, and, if there be no surviving husband or wife, then the child or children, if any, of the deceased shall be allowed all the wearing apparel and ornaments and household furniture of the deceased, and all the property and articles that was or were exempt to the deceased at the time of his or her death, from levy or sale upon execution or attachment, *and* other personal property, to be selected by her, him or them, not exceeding two hundred (200) dollars in value, *and this allowance* shall be made to such surviving husband or wife or child or children, if any, as well when he or she or they shall receive provision made in the will of the deceased as when the deceased dies intestate." A careful study of the above provisions of the statute satisfies me that the legislature

intended to recognize the right of any person to dispose of
all of his personal property by will, but that, in the event
of his failing so to do, the surviving husband or wife
should be permitted to take and hold, as against the heirs
at law, "all the wearing apparel and ornaments and house-
hold furniture of the deceased, and all the property and
articles that was or were exempt to the deceased at the
time of his or her death, from levy or sale upon execution
or attachment." Down to that point in the section of the
statute quoted I am satisfied that the legislature intended
the articles of personal property thus enumerated to go
to the surviving husband or wife *only* when the same had
not been disposed of by will. Then, realizing that upon
the death of the party the surviving husband or wife
might be left without immediate means of support, it
further provided: "And *other* personal property to be se-
lected by her, him or them, not exceeding two hundred
(200) dollars in value." By "*other* personal property" it
is clear that the legislature meant personal property *other*
than wearing apparel, ornaments and other articles of
personal property previously enumerated in the section.
The word "other" means that, or it is meaningless. Hav-
ing decided to give the surviving husband or wife other
personal property not exceeding $200 in value, in order to
make it absolutely certain that such survivor should be
entitled to such $200, the legislature added: "And *this
allowance* shall be made to such surviving husband or
wife or child or children, if any, as well when he or she
or they shall receive provision made in the will of the
deceased as when the deceased dies intestate." It is clear
to my mind that the legislature intended the words "*this
allowance*" to apply only to the "*other* personal property,"
and that it never was the intention of the legislature that
it should apply to the ornaments, wearing apparel, etc.,
first enumerated in the section under consideration. The
"other personal property," it will be observed, is not to be
selected from the ornaments and wearing apparel, because
by the word "other" it is distinctly separated therefrom.

This $200 worth of personal property it is evident the legislature intended might be selected from personal property outside of what had just been described in the act, such as horses, cattle, moneys, notes, mortgages, and the like; and, in order that neither heirs at law nor creditors might deprive the survivor of that $200 worth of property by any rule of construction such as election or the like, the legislature added the words: "And *this allowance* shall be made to such surviving husband or wife or child or children, if any, as well when he or she or they shall receive provision made in the will of the deceased as when the deceased dies intestate." "In the construction of statutes, a limiting clause is to be restrained to the last antecedent." *Cushing v. Worrick,* 9 Gray (Mass.) 382; Sedgwick, Construction of Statutory and Constitutional Law (2d ed.) p. 226; *Pearce v. Bank of Mobile,* 33 Ala. 693; *School District v. Coleman,* 39 Neb. 391.

That the legislature intended to apply the exception in the case of one dying testate to the $200 worth of other personal property is a reasonable construction is borne out by the fact that that clause of the section under consideration designates the only property which would provide support for the survivor during the time consumed in the administration of the estate and prior to the time when the bequests in the will would become available to the beneficiaries. It being just as necessary that a survivor should have means with which to buy bread when the deceased dies testate as when he or she dies intestate, there is good reason why the exception should have been inserted. This is the thought which runs through all of the authorities. They are quite uniform in holding that it is beyond the power of a testator to deprive his widow or children of means of support during the pendency of probate proceedings and prior to the time when the bequests in the will become available. To my mind, there is no escape from the conclusion that the act under consideration was designed to provide means by which a survivor could obtain immediate temporary support, and that it

was not the intention of the legislature to take away from the owner of personal property his right to dispose of the same by will, but to simply burden the personal estate coming within the exception referred to, to the extent of providing such immediate, temporary support for the survivor. If I am right in this construction of the statute, then Mrs. O'Shea had a perfect right to bequeath the specific articles of personal property set out in her will, as was done, including her former husband's picture and the wedding ring which he had given her; and appellee must be satisfied with taking the lands devised to him by the will, and "other personal property"; that is, property other than the ornaments, jewelry, etc., to the extent of $200.

If I am right in this, it is not necessary to either overrule or distinguish *Brichacek v. Brichacek,* 75 Neb. 417, which could be easily done, or to discuss the doctrine of election, which could also be invoked to defeat a recovery by appellee in this case, which is so utterly without merit as to call forth the language of the Chief Justice in his opinion and which for emphasis I here repeat: "As we read the will, and observe that it confers upon the sisters of the deceased husband the ring given the testatrix by him, and to the son the portrait of his deceased father, the mind and conscience revolt and turn away from allowing the effort of appellee to thus ignore the expressed will of his deceased wife from whom he received such liberal provision. The will was, no doubt, made in the firm belief in the integrity of the husband and that he would respect her last wishes, and either decline to accept the provisions made for him and take what the law gave him, or accept those provisions as made." Appellee should not be permitted to "thus ignore the expressed will of his deceased wife from whom he received such liberal provision." Being unwilling to deal justly with the estate left by her, and with the son whom she committed to his care, the court should compel him to do so.