HOPKINS, et al. *v.* LEE, et al.

May 18, 1953

No. 38897 32 Adv. S. 23 64 So. 2d 759

*Barnett, Jones & Montgomery,* for appellants.

*A. K. Edwards,* for appellees.

Roberds, P. J.

The question for decision herein is the legality of the merger into Pinola Consolidated School District of the territory embraced within the Shivers Consolidated School District, both districts being located in Simpson County, Mississippi. The chancellor held there was not a legal merger, or annexation, from which decree the members of the County School Board of said County appeal.

The problems involved will be revealed by a recital of the proceedings and essential facts.

Both districts had been created and in existence and operation for many years before this contest arose.

On August 19, 1951, the Trustees of the Shivers District entered into a written agreement with the Trustees of Newhebron Consolidated Line School District, located in Lawrence County, under which the school children in the Shivers District had the privilege of attending the Newhebron School for the school year 1951-52. This agreement was also approved and signed by the superintendents of education of said counties. The agreement obligated the Shivers District to pay the Newhebron tuition for the foregoing privilege to be raised by ad valorem tax to be levied upon the land in the Shivers District, and also a percentage of rentals and bonuses to be realized under oil and gas leases on 16th section school lands located in the Shivers District. The contract also provided that any of the Shivers children who desired to do so might go to Pinola, their tuition to be

paid in the same manner, although the agreement was not signed by the Trustees of the Pinola District.

Shortly before September 3, 1951, (the exact date not being shown), sixty-one percent of the qualified electors of the Shivers District filed with the County Board of Education of Simpson County a petition asking the Board "* * * to annex said District to Pinola Consolidated School District, should Shivers School fail to function as a school in 1951-52. We agree for any territory to be released from this petition by persons wishing to be annexed to another school."

The Board considered that petition at its September 3, 1951, meeting. Its order of that date refers to the petition as one "* * * to consolidate said District with Pinola Consolidated School District," and then continues further consideration of the petition "* * * in order to allow time for a petition of acceptance to be filed by the qualified electors of the Pinola Consolidated School District." At a recessed meeting, held September 5, 1951, the order recites that there came on for hearing by the Board a petition of "a majority of the qualified electors of the Pinola Consolidated School District asking that the territory embraced within the Shivers District * * *" be consolidated with the Pinola District, and also came on for consideration a petition of sixty-one percent of the qualified electors of the Shivers District asking that the territory of that District "be added to" the Pinola District. The order then finds "* * * that the best interest of the children will be served by the consolidation and that said consolidation will not inconvenience any." It then orders "* * * that the land comprising the Shivers Consolidated School District be, and the same is hereby annexed to the Pinola Consolidated School District but that this order shall in nowise interfere with the provisions for the 1951-52 session made by the trustees of the Shivers School."

On February 1, 1952, certain school patrons and electors of the Shivers District, for themselves and such

others as desired to join with them, filed a petition with the Board of Supervisors of Simpson County, alleging that, for stated reasons, the action of the Board of Education of Simpson County in attempting to annex to Pinola the Shivers territory was void, and asking the Supervisors to permit and authorize proper suit to test the legality of such action. The supervisors declined to act upon that petition until July 7, 1952, when it refused to institute such action or give its consent for that to be done; whereupon, on the same day, petitioners filed the bill herein. A total of one hundred and nine persons finally joined therein.

The bill alleged that the action of the Board of Education was illegal and void for these reasons. First, because the Shivers petition was conditional in that it prayed the Board to annex the Shivers territory to Pinola "should Shivers School fail to function as a school in 1951-1952," and it is alleged that Shivers did function as a school during that time; second, because the Shivers petition was uncertain, vague and indefinite in that it contained this statement: "We agree for any territory to be released from this petition by persons wishing to be annexed to another school"; third, that the order of the Board was not responsive to the Pinola or the Shivers petitions; fourth, that neither petition described the territory ordered to be annexed to Pinola, nor did the order of the Board describe the total area after such attempted annexation.

The answer took issue with these legal conclusions, and further asserted that if any or all of them are well taken they are cured by Chapter 278, Miss. Laws 1952, which purports to validate school districts created prior to January 1, 1952.

We think the first two contentions are well taken and, therefore, do not pass upon the other two invoked by complainants.

And as to the Shivers petition being conditional: It asked that Shivers territory be annexed to Pinola if the

Shivers school failed to function in 1951-52. Under this record Shivers did function as a legal entity during that time. It had sixty children who attended school. Some fifty-seven of these went to Newhebron; two or three went to Pinola. The trustees of Shivers signed the Newhebron contract in their official capacity. It was approved by the county superintendents of education. The trustees paid Newhebron and also Pinola tuition for the respective number of children who went to each of those schools. That was paid out of funds belonging to Shivers school. The trustees of Shivers transported the children to Newhebron by busses belonging to the Shivers district.

But, aside from the testimony, the question is foreclosed by the pleadings and agreement of counsel. The bill was filed July 7, 1952. That was after the 1951-1952 school session. It alleges that the Shivers District was created August 7, 1925, "and is now a legally created school district of said county and has been since its creation; that it has been legally functioning as a consolidated school district since its creation, carrying on all the functions of a school," detailing them, and has enjoyed the rights and benefits of a legally constituted and functioning school district. Again, that said school is "still a legally existing and functioning school district with all the rights, powers and privileges of a school district and is still a legal entity under the laws of the State of Mississippi." The answer says "Defendants admit that said Shivers Consolidated School District did function from the time of its organization by the County School Board until the close of 1951-52 session thereof as a legally existing consolidated school district entitled to perform all of the functions of a consolidated school district under the laws of the State of Mississippi, and that it did so." This agreement of counsel, dictated by counsel for appellants, appears in the record: "It is agreed by and between counsel for the complainants and for the defendants that the defendant's answer is effective to operate as an admission of all the allegations of the

material fact contained in the original bill of complaint and that no proof of any of such facts be required on the trial of this case." All parties assume that the action and proceedings taken by the Board of Education were under Section 6274 (d), Miss. Code 1942. That section provides:

"Whenever a petition signed by a majority of the qualified electors of an existing consolidated school district * * * shall be filed with the president of the county board, requesting that certain territory, fully described therein, be added to such district, and a petition signed by a majority of the qualified electors residing in the territory to be added to such district is filed with the president of the school board, then the school board shall add such territory to such school district." This section does not contemplate action upon a conditional petition such as we have in this case. The annexation of the Shivers territory to Pinola being conditional upon the non-functioning of Shivers for 1951-52 school year, and the undisputed and admitted fact being that Shivers did function during that period, the petition constituted no legal foundation for the Board to annex the Shivers territory to Pinola.

 The Shivers petition is qualified and rendered uncertain by this provision: "We agree for any territory to be released from this petition by persons wishing to be annexed to another school." Obviously that leaves indefinite and uncertain the territory to be finally annexed to Pinola. Any portion, or even all, of such territory might be withdrawn from the petition. The statute required a description of the land to be annexed. Here any landowner could withdraw his land. That leaves both the land and the number of signers indefinite.

In determining the evil effect of such a provision, it is clear in reason that this provision would, and, no doubt did, induce persons to sign the petition who otherwise would not have done so. The defect has special weight

here because Pinola's petition did not propose in affrmative terms, to take the Shivers territory. It was in the form of an acceptance of a proposal by Shivers. The Pinola petition said the signers thereof ''do hereby agree to accept the Shivers Consolidated School District into our District.'' They were accepting all of the territory —not a part of it if some owner or owners cared to withdraw land therefrom. But the acceptance was necessarily according to the terms of the Shivers proposal and that proposal was that any owners could withdraw, which left the amount of territory and the numbers of signers uncertain and indefinite.

·But it is urged by appellants that Chapter 277, Laws of 1952, validated this illegal proceeding. We do not think that statute applicable to this proceeding for two reasons:

First, that statute applies to districts created and functioning as one entity, brought about by the action validated, prior to January 1, 1952. The purpose of the action here was to combine Shivers and Pinola into one legal entity. But it is undisputed, as shown above, that each district was acting separately and independently from the other on and prior to January 1, 1952. No one claims that on or prior to January 1, 1952, the two districts were performing as one district—as a unit. Pinola's trustees were operating the Pinola School and the Shivers' trustees were operating the Shivers School.

And, secondly, we think the validating act was not applicable here because, in our opinion, there was a contest pending, within the meaning of the Act, when it became effective April 9, 1952. By its terms it has no application ''where litigation is now pending as to the validity of any such district.'' As heretofore stated, certain electors, on February 1, 1952, filed with the supervisors a petition, asking it to institute this action or permit petitioners to do so. The Board did not act upon this petition until July 7, 1952; therefore, the petition

was pending April 9, 1952. The preliminary petition was a prerequisite to the right of the petitioners to file this suit. Sections 2955 and 2956, Miss. Code 1942; Storey v. Rhodes, 178 Miss. 776, 174 So. 560. We realize, as urged by able counsel for appellants, that an acceptable definition of litigation, could be "* * * a contest in a court of justice, for the purpose of enforcing a right, a judicial contest, a judicial controversy, a suit at law." In re: Loudenslager's Estate, 113 N. J. Eq. 418. However, we do not think the word litigation, as used in the validating Act, should be given a strict definition, or even the usual definition. It should be given a liberal interpretation to effectuate the purpose of the Legislature. That purpose was to preserve to parties the right to have tested in the courts the validity of actions then being legally contested, in good faith, in the manner and in the tribunal provided by law. Here the law required that this preliminary step be taken by appellees before the tribunal whose action they sought to invoke. It was not the purpose of the Legislature to arbitrarily cut off and deny its electors the opportunity, under the foregoing circumstances, to assert their rights in the courts of the land.

Affirmed.

*Lee, Kyle, Ethridge* and *Lotterhos, JJ.,* concur.

---

ON MOTION OF APPELLEES TO DISMISS SUGGESTION

OF ERROR

July 3, 1953 35 Adv. S. 4 65 So. 2d 838

KYLE, J.

An opinion was rendered by us in this cause on May 18, 1953, affirming the decree of the lower court. The appellants thereafter filed a suggestion of error. Before the suggestion of error had been acted upon by the Court, appellees' attorney filed a motion to dismiss the sugges-

tion of error on the ground that after the rendition of the judgment of this Court on May 18, 1953, the County School Board of Simpson County had taken other action with reference to the territory embraced and included in the Shivers Consolidated School District, which made it unnecessary for this Court to consider the suggestion of error. A certified copy of the orders of the County School Board adopted on June 8, 1953, was attached to the motion to dismiss the suggestion of error.

This Court cannot entertain the motion to dismiss the suggestion of error on the ground alleged in the motion; neither can this Court consider on this appeal any of the exhibits attached to the motion. The motion is therefore denied.

The suggestion of error has been carefully considered by the Court on its merits, and in our opinion, the same should be overruled.

Motion to dismiss suggestion of error denied, and suggestion of error overruled.

*Roberds, P. J.,* and *Lee, Ethridge,* and *Lotterhos, JJ.,* concur.