GEORGE OLSEN ET AL., APPELLANTS, V. IRMA GROSSHANS, SUPERINTENDENT OF SCHOOLS OF KIMBALL COUNTY, NEBRASKA, APPELLEE.

71 N. W. 2d 90

Filed June 10, 1955. No. 33701.

*Torgeson, Halcomb & O'Brien,* for appellants.

*Beatty, Clarke, Murphy & Morgan, John P. O'Brien,* and *J. H. Myers,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, George Olsen and others, as legal voters of School District No. 17 in Kimball County, appealed from a judgment of the district court assigning that such court erred in dismissing their amended petition in error which sought to reverse orders of defendant, Irma Grosshans, superintendent of schools of Kimball County. Such orders denied petitions requesting the attachment of all of School District No. 17 to School District No. 9, which includes the village of Potter in Cheyenne County, under the provisions of section 79-402, R. S. Supp., 1951, and statutes in pari materia therewith, which were then applicable and controlling. We conclude that the assignment should not be sustained.

Section 79-402, R. S. Supp., 1951, provides: "The county superintendent shall create a new district from other districts, or change the boundaries of any district upon petitions signed by fifty-five per cent of the legal voters of each district affected. Such officer shall have the discretionary power to annex any territory, not organized into districts, to any existing district; Provided, changes affecting cities or villages shall be made upon the petition of the school board or the board of education of the district or districts affected. Before the county superintendent authorizes any changes as provided in this section, the county superintendent must fix a date for hearing and give all interested parties an opportunity to be heard at such hearing. Territory

may be annexed to a district from adjoining county when approved by the county superintendent of the counties involved. A newly enlarged district shall assume any indebtedness previously incurred by any one or more districts annexed, unless otherwise specified in the petitions." The second sentence thereof is not involved herein.

Also, section 79-404, R. R. S. 1943, provides: "A list or lists of all the legal voters in each district or territory affected, made under the oath of a resident of each district or territory, shall be given to the county superintendent when the petition is presented."

It is generally the rule that in an error proceeding in the district court, that court, and this court upon appeal therefrom, must look to the transcript of the proceedings of the inferior court or tribunal filed with the petition in error to ascertain what happened there. Such proceeding is ordinarily tried on the appropriate and relevant questions of law set out in the petition in error, and appearing in the transcript. Also, in an error proceeding from an inferior court or tribunal to the district court, and on appeal therefrom to this court, error cannot be predicated on sufficiency or insufficiency of the evidence as a matter of law to affirm or reverse the finding and judgment of the court or tribunal from which error was prosecuted, unless all of the material evidence is properly presented in a bill of exceptions. Furthermore, when a question of the sufficiency of the evidence is involved in an error proceeding, the findings and judgment of the lower court should be affirmed by the district court and by this court upon appeal therefrom when all of the material and relevant evidence with reference thereto is not contained in a bill of exceptions and the transcript fails to disclose any error prejudicial to the party prosecuting the error proceeding. In re Estate of Vance, 149 Neb. 220, 30 N. W. 2d 677.

Also, in such cases, as conceded by plaintiffs, nothing

can be added to or taken from the record by simple averment in a petition in error, and extrinsic facts pleaded therein do not form part of the record in which an order is sought to be reversed. In that regard, the stenographically reported and transcribed record of the hearing involved herein was certified and allowed by defendant and attached to the end of the transcript. It consisted of eight pages of evidence, statements of counsel, legal voters, and the two county superintendents involved, given and made at the hearing. However, such reported and certified record, not supporting plaintiffs' contentions in any event, was never offered in evidence and there is no bill of exceptions before this court. Therefore, any discussion of its contents would serve no purpose.

It is generally the rule that the doctrine of presumptions in favor of the regularity of proceedings in courts of general jurisdiction does not apply to courts or tribunals of inferior and limited jurisdiction who act in a judicial capacity, but as to such courts or tribunals the facts necessary to confer jurisdiction must fairly appear from the record. In other words, jurisdictional facts will not be presumed in order to affirm or reverse the final orders of such tribunals. Such facts must affirmatively appear upon the face of the record. Shambaugh v. Buffalo County, 133 Neb. 46, 274 N. W. 207. In Proudfit v. School District, 109 Neb. 173, 190 N. W. 874, referring to a transcript of the proceedings to change the boundary lines of school districts located partly in two different counties, it is said: "All jurisdictional facts should appear on the face of the record. This being a direct attack upon the proceedings, all steps necessary to confer jurisdiction on the superintendent must be shown to have been taken. Dooley v. Meese, 31 Neb. 424." In Dooley v. Meese, 31 Neb. 424, 48 N. W. 143, it is said: "In controversies in regard to the boundaries of school districts, where it is sought to change the same, it must appear that the preliminary steps were not

taken only by the presentation of the proper petitions, but by notice of the time and place of presenting the same."

Also, in State ex rel. McLane v. Compton, 28 Neb. 485, 44 N. W. 660, it is said: "A petition for changing the boundaries of a school district must be in writing, as it becomes a matter of record and the groundwork for the exercise of jurisdiction by the superintendent. * * * Therefore, in order to secure a change in the boundaries of a district a petition duly signed by the requisite number of persons must be presented to the superintendent, and without such petition he has no authority to act." See, also, 56 C. J., Schools and School Districts, § 66, p. 215; 78 C. J. S., Schools and School Districts, § 37, p. 696. As stated in such latter section at page 703: "The character and qualifications of the persons by whom a petition is to be signed, and the number or proportion of such persons whose signatures must be attached to the position (petition), ordinarily are prescribed by the statutes which provide for the presentation of the petition, and compliance with such requirements is essential to the validity of the petition." Also, as said on page 702: "It has been held that, where the statute requires that the petition be accompanied by a list of taxpayers or residents of the district, failure to attach such list renders the petition ineffective."

In Cacek v. Munson, ante p. 187, 69 N. W. 2d 692, we concluded that when proper petitions are filed with the county superintendent of schools requesting creation of a new district from other districts, or a change of boundaries of school districts under the provisions of section 79-402, R. S. Supp., 1951 (now section 79-402, R. S. Supp., 1953, as amended in other particulars not applicable here), it is his duty to give proper notice of and hold a hearing thereon, and at or after such hearing to factually determine whether or not 55 percent or more of the legal voters affected have lawfully petitioned the same, and such action is judicial in nature. Also, where

the record of the proceedings before the county superintendent of schools in a proper hearing upon petitions filed under section 79-402, R. S. Supp., 1951, discloses that 55 percent or more of the legal voters of each school district affected have signed and filed proper petitions requesting creation of a new district from other districts or a change of boundaries thereof, the county superintendent has jurisdiction and the mandatory duty. to order the changes requested by such petitions, which order may be reviewed by petition in error, thereby providing an adequate remedy. Conversely, if no proper petitions are filed or if such proceedings disclose that less than 55 percent of the legal voters of either or both districts have signed and filed petitions, then the county superintendent has no jurisdiction and mandatory duty to order the boundary changes requested. State ex rel. Larson v. Morrison, 155 Neb. 309, 51 N. W. 2d 626.

Section 79-109, R. S. 1943, originally provided: "The county superintendent shall not refuse to change the boundary line of any district or to organize a new district when he shall be asked to do so by a petition from each school district affected, signed by two thirds of all the legal voters in such district. * * * Provided, changes affecting cities shall be made upon the petition of the board of education of the district or districts affected." In that connection, the proviso of section 79-402, R. S. Supp., 1951, to wit: "Provided, changes affecting cities or villages shall be made upon the petition of the school board or the board of education of the district or districts affected," was lifted from section 79-109, R. S. 1943, with "villages" included therein. In that connection, the proviso relates not merely to the clause which now immediately precedes it, but is applicable in every such instance where changes in boundaries of school districts are proposed under section 79-402, R. S. Supp., 1951. School District No. 10 of Polk County v. Coleman, 39 Neb. 391, 58 N. W. 146.

The word "provided" bears, as it did in section 79-

109, R. S. 1943, the meaning of "and" or "but," within the rules stated in State ex rel. Higgs v. Summers, 118 Neb. 189, 223 N. W. 957, and a petition must be properly signed, authorized, and filed by the school board or board of education and not by the legal voters of such a district affected. Thus, in determining the sufficiency of such petition, the county superintendent must necessarily be satisfied that a majority of the board properly authorized the signing and filing of the petition. In that regard, a transcript of so much of the minutes of the board with relation thereto, duly certified to be true and correct by the secretary, should be given to the county superintendent when the petition is presented, as was done in the case at bar. By analogy, in such situation the school board and board of education represent all of the legal voters of such a district and it will not be necessary to also give the county superintendent a sworn list of all the legal voters in the district in order to give the county superintendent jurisdiction and authority to act.

It appears that section 79-135, R. S. 1943, relating to and authorizing the formation of school districts across county lines, was inadvertently repealed as an incident to recodification. Such section originally provided that: "When persons living in two or more counties desire to form a school district, *it shall be the duty of the superintendents of the respective counties* to authorize the persons to organize such district * * *." (Italics supplied.) To correct such error or omission, the following language was inserted by amendment in section 79-402, R. S. Supp., 1951: "Territory may be annexed to a district from adjoining county *when approved by the county superintendent of the counties involved.*" (Italics supplied.) Thus, legislative permission to cross county lines was restored and the legislative intent, notwithstanding a variance from the original language of section 79-135, R. S. 1943, was to affirm that there shall be no doubt of the right of petitioners to cross county lines

in the formation of districts and in changing boundaries thereof when petitions therefor are approved by the county superintendents of the counties involved. The words "county superintendent" are singular, but the words "of the counties involved" are plural, meaning that multilateral judicial action of the county superintendents of all counties involved is required, and that unilateral action by any one of them is insufficient.

The word "approved" we conclude has the connotation of adjudication and not an exercise of discretion or a ministerial act. State ex rel. Johnson v. Tilley, 137 Neb. 173, 288 N. W. 521. Thus, if the creation of a new district from other districts, or the making of boundary changes thereof across county lines is requested in the manner provided by section 79-402, R. S. Supp., 1951, then the scope of action by the county superintendents of the counties involved is a multilateral mandatory duty, judicial in nature, as distinguished from discretionary authority. This is true because a statutorily defined group of persons, "the petitioners," have an interest in having the act done, or a claim de jure that the approval shall be given only if the petitions filed with each county superintendent of the counties involved are judicially found and determined after notice and hearing to be sufficient by all of such county superintendents concurrently acting multilaterally. Conversely, they have no jurisdiction and mandatory duty to grant the changes requested.

In Report of Attorney General, Nebraska, 1951-1952, p. 595, will be found a comprehensive legislative history of the provisions of section 79-402, R. S. Supp., 1951, and statutes in pari materia therewith, together with administrative and judicial construction thereof, since 1869. Numerous statutes and authorities are cited and discussed therein, which require no repetition here.

In the light of the foregoing discussion and authorities, we have examined the transcript presented herein. Summarized, it discloses as follows: The petition of

School District No. 17, filed with the county superintendents involved on June 26, 1952, unconditionally requested that it be attached to School District No. 9. It contained the names of eight purportedly "qualified school electors and legal voters" of the district. The signatures of Delton Meyer and Clodio B. Aragon, hereinafter mentioned, were included. All of the signatures were verified. However, the petition does not show upon its face by any allegation or language that the eight signatures constituted 55 percent or more of the legal voters of the district. "A LIST (Not signatures) OF THE LEGAL VOTERS IN SCHOOL DISTRICT NO. 17, KIMBALL COUNTY, NEBRASKA" consisting of 14 names, was presented to the superintendents, but the attached oath simply swore that such "named persons are all legal and qualified school electors in School District No. 17, * * * as I verily believe," and did not swear under oath that it was a "list * * * of all the legal voters" in the district, as required by section 79-404, R. R. S. 1943. The insufficiency of such petition and oath is apparent upon its face.

The petition of the board of education of School District No. 9 was not filed with the county superintendents involved until September 17, 1952. Further, such petition was simply a new conditional proposal and not an acceptance of the unconditional petition filed by School District No. 17. Therein, the attachment of School District No. 17 to School District No. 9 was made dependent upon the acceptance of two conditions, to wit: (1) That School District No. 17 should be required to continue its corporate existence and continue its own school program at its own expense until June 1, 1953; and (2) that School District No. 9 contemplated the holding of an election to determine whether or not bonds of indebtedness should be issued, which bonds of indebtedness might be authorized and issued prior to June 1, 1953, in which event School District No. 17 and its included properties should be required to have the same relation to

and bear the same responsibilities and liabilities with respect to all the indebtedness of School District No. 9 which exists June 1, 1953, as if it existed prior to September 17, 1952, or was incurred after June 1, 1953.

In that regard, section 79-402, R. S. Supp., 1951, does provide that: "A newly enlarged district shall assume any indebtedness *previously incurred* by any one or more districts annexed, *unless otherwise specified in the petitions.*" (Italics supplied.) However, the proposed bonded indebtedness here involved is not an indebtedness previously incurred, and the petition of School District No. 17 did not mutually accept or specify that it would assume its share of such subsequent bonded indebtedness. It cannot be assumed from the record before us that the signers of the petition in School District No. 17 did or would have signed the same or did or would have consented thereto had they known that the indebtedness for additional school bonds was proposed to be subsequently voted by School District No. 9 and imposed upon School District No. 17 without the legal voters thereof having any voice in the matter, or that annexation was proposed to be delayed for another school year at their expense.

Such question has not been previously raised or adjudicated in this jurisdiction. However, there are authorities from other jurisdictions. As we view it, section 79-402, R. S. Supp., 1951, which authorizes creation of a new school district from other districts or a change in the boundaries of any district, contemplates mutuality of action by the districts affected and requires a concurrence of the respective petitions filed therefor in all material respects with regard to the changes requested therein, and unless the petitions of the separate districts affected concur in substantially the identical action requested, the county superintendent or superintendents are without jurisdiction or authority to act thereon. Smith v. State ex rel. Cole, 47 Okl. 682, 149 P. 884; Hopkins v. Lee, 217 Miss. 624, 64 So. 2d 759.

The insufficiency of the petition of School District No. 9 is apparent upon its face.

In the case at bar, notice was duly given, and a hearing was had on October 29, 1952, at Kimball, before the county superintendents of Kimball and Cheyenne counties, acting multilaterally. Thereafter, on November 20, 1952, a written record of the proceedings and statements of findings by them was signed by such superintendents. It recited, among other things, that a legal voter had challenged the right of Delton Meyer and Clodio B. Aragon to sign the petition of School District No. 17 as legal voters therein. The county superintendent of Cheyenne County stated it was her opinion that in view of the fact that the challenged signers on the petition of School District No. 17 had subscribed to the oath of qualifications required by section 79-428, R. R. S. 1943 (relating to school district elections), the required 55 percent of the electors of School District No. 17 had signed the petition and "the request of the petitions should be granted and she will sign an order approving the petitions." However, she never did sign such an order. A situation comparable in material respects arose in School District v. Elliott, 90 Neb. 89, 132 N. W. 922, wherein it is said: "Assuming that the petition was a sufficient compliance with the law to give the board jurisdiction it is very clear that the board took no such action as would lay the foundation for review. * * * They found the petition was 'correct,' and made a 'request' that the change in the district be made, but took no action making it. * * * There was no kind of order made from which any appeal or proceeding in error could be taken. No action is shown to have been taken by the superintendent, and the boundary lines of the districts were left as they had before that time existed."

On the other hand, the defendant, county superintendent of Kimball County, expressed her belief that next to the last sentence of section 79-402, R. S. Supp.,

1951, was not mandatory but discretionary, and further stated "that in her opinion said districts should not be merged and the request of the petitions should be denied and * * * that she would not approve the petitions and that she would not enter any order providing for alteration of the existing District 17 of Kimball County, Nebraska and District 9 of Cheyenne County, Nebraska."

In that regard, as stated in 56 C. J., Schools and School Districts, § 73, p. 238: "The recital, in an order otherwise valid, of incorrect reasons for making it does not render it void. The making of an order or passage of a resolution to create or alter a district, which is ineffective on account of formal defects therein, does not prevent the board from entering a proper order or passing a proper resolution at a subsequent time." See, also, 78 C. J. S., Schools and School Districts, § 44, p. 733, where it is said: "It has been held that an order may be amended to speak the truth, and that an order which is deficient or defective may be amended, completed, and perfected, even after a suit attacking the order has been instituted." The latter situation actually arose in this case.

In that connection, on August 7, 1953, after plaintiffs had filed their original petition in error on November 26, 1952, defendant, county superintendent of Kimball County, prepared and filed a complete, perfected, and final order denying the relief requested in the respective petitions. The county superintendent of Cheyenne County never signed such order. Thereafter, on August 14, 1953, the trial court sustained defendant's demurrer to plaintiffs' original petition, and gave plaintiffs 30 days to file an amended petition, which they did without objection on August 24, 1953, praying that the orders of November 20, 1952, and August 7, 1953, should be reversed.

In the order of August 7, 1953, it was found and adjudged by defendant herein that the petition of School

District No. 17 was insufficient to give the county superintendents jurisdiction for the reasons that no list of all the legal voters of such district under oath, as required by section 79-404, R. R. S. 1943, was ever presented to the county superintendents, and the petition did not allege and in any event was not signed by 55 percent or more of the legal voters of School District No. 17, because Delton Meyer and Clodio B. Aragon were not legal voters of School District No. 17. It found and adjudged that the petition of School District No. 17 was unconditional, but the petition of School District No. 9, filed long after the petition of School District No. 17, was insufficient because it was not unconditional but was predicated on conditions prejudicial to the rights of the legal voters of School District No. 17 who never accepted the conditional proposals made in the petition of School District No. 9. She erroneously found and adjudged that School District No. 9 was required to give the superintendents a sworn list of the legal voters of such district and that next to the last sentence of section 79-402, R. S. Supp., 1951 was discretionary and not mandatory, but such conclusions did not make the order void.

Defendant's demurrer to plaintiffs' amended petition, and defendant's motion to dismiss were overruled, and defendant answered, relying among other defenses upon the alleged lack of jurisdiction of the county superintendents, as disclosed by the transcript, and praying for dismissal of plaintiffs' amended petition. After a hearing, the trial court found that the amended petition of plaintiffs in error was not well taken and rendered judgment dismissing same at plaintiffs' cost.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiffs.

AFFIRMED.