AVEN *et al. v.* SINGLETON *et al.*

[96 South. 165, En Banc. No. 23161.]

1. CONTRIBUTION. *Joint debtors may sue joint signers of note for con-tribution, and as many judgments may be entered as is necessary to adjust rights of parties.*

Under section 729, Code 1906 (section 512 Hemingway's Code), pro-viding that a declaration at law shall contain a statement of the facts constituting the cause of action in concise language, and that, if it contain enough matter of substance to disclose the merits of the cause, it shall be sufficient, and that it shall not be an objection to maintaining an action that the form should have been different, and under sections 813 and 814, Code 1906 (sections 601 and 602, Hemingway's Code), providing that judgment may be rendered for or against one or more plaintiffs or defendants as the right may ap-pear, and shall state separately any amount allowed to pay any of the parties, and that as many judgments and verdicts, joint, sep-arate, and cross, may be rendered as may be necessary to adjust the rights of several parties in the same action, several joint debtors who have paid the joint obligation may sue several joint signers of a note who have not paid any part thereof in the circuit court by stating in their declaration the facts upon which their rights are founded for contribution; and as many judgments may be entered in such suit as may be necessary to adjust the rights of the parties.

2. PARTIES. *Misjoinder of parties in declaration at law must be raised by plea, and not by demurrer.*

The misjoinder of plaintiffs and defendants in a declaration at law cannot be raised by demurrer, but must be raised by plea under sec-tions 722 and 723, Code 1906 (sections 505, 506, Hemingway's Code); and, where necessary, when so raised, the declaration may be amended so as to obviate the objection, and so as to bring the cause to trial on its merits. Therefore a demurrer to a declaration at law on such grounds cannot be sustained.

SMITH, C. J., and SYKES, J., dissenting.

APPEAL from circuit court of Grenada county.

HON. T. L. LAMB, Judge.

Suit by C. O. Aven and others against W. D. Singleton and others. From a judgment sustaining a demurrer to and dismissing the declaration, plaintiffs appeal. Reversed and remanded.

*Bruce D. Newsom* and *Wells, Stevens & Jones,* for appellants.

We wish to say with reference to every Mississippi case cited by counsel for appellees that none of them are in point here, and for two reasons: 1. None of the cases cited involve a suit between makers of a note against co-makers, to enforce the liability of those co-makers who have not paid any part of the note. 2. All of the cases relative to the doctrine of contribution, and to the effect that the remedy of a co-maker in such cases is for contribution in equity, were decided before the present law became effective, and even before the act of February 24, 1844, as found in article 11, page 555, et seq. of Hutchinson's Mississippi Code.

We have no issue with counsel for appellees about the doctrine of contribution, which is certainly a valuable remedy in such cases even now; and before the passage of the act, whose forerunner was the act of February 24, 1844, it was the sole remedy of course. Our contention at the present time is that the statute did create a new remedy enforceable in the circuit court.

Counsel for appellees has much to say over the language used in the declaration: "They are the holders of the said notes in due course, for valuable consideration, and sue thereon as said holders." As between co-makers, those who pay off the notes and have a right of action on the notes against those co-makers not contributing to paving off the notes, certainly stand in the position of legal holders of the notes for valuable consideration to the extent of their right against the delinquent co-makers, and to that extent they

132 Miss.—17

are holders in due course. The term "holders in due course" simply means legal holders with a right to enforce the notes either in whole or *pro tanto,* and is a right given by the statute which makes them legal holders with a right of action against the delinquent co-makers. We submit that the declaration does state a cause of action, even if the court should hold technically the appellants are not holders in due course.

It is true, as counsel for appellees states, that the fore-runner of the present law is found, not in the Code of 1857, as stated in·our original brief, but in the act of February 24, 1844, found in Hutchinson's Mississippi Code, article 11, page 555, et seq., but counsel has not demonstrated that the argument we made on page 10 of our original brief, with reference to the change in the law by the Act of 1844 is erroneous. The law prior to 1844 is found, as stated in·our original brief in Hutchinson's Mississippi Code, page 837, paragraph 26, which we quote in full on page 10 of our original brief, but in the act of February 24, 1844, found in Hutchinson's Mississippi Code, Article 11, page 555, et seq., but counsel has not demonstrated that the argument we made on page 10 of our original brief. Substitute the year 1844 for the year 1857, and the argument still applies with full force. In short, whenever this law did come into effect, and it did in 1844, it changed the previous law so as to create a remedy on the note in favor of those makers of the note paying all of it, as against those co-makers who did not pay their part.

With reference to the failure of the court to give a judgment against those appellees not objecting to the jurisdiction of the lower court, we submit that it was no fault of the appellants that they did not get this judgment. The court sustained the demurrer as to all parties, and its judgments so show. Neither can any action of the appellants change the constitutional provision of section 157 of the Constitution which makes it mandatory upon the circuit court to transfer to the chancery court any cause whereof the chancery court has jurisdiction.

We submit, however, that in this case the circuit court had full jurisdiction, and that the cause should be reversed and remanded.

*Cowles Horton,* for appellees.

I think learned counsel misconceive the position of the appellees and the judgment of the court below. The question is, not whether appellants can maintain a suit in the circuit court, but whether they can maintain this suit at all. We maintain they cannot, that they are not "holders in due course" with rights and remedies given by the law to such persons, but that their rights and their remedies arise out of the fact that they discharge a common burden and, since they do so, are entitled to maintain an action, not on the notes, but for contribution because they paid the notes. This position, if sound, makes it imperative that the judgment appealed from be sustained.

When these notes were executed Mr. Holcomb acquired certain rights against these makers. When these appellants paid these notes, they became satisfied for all purposes and thereafter neither Mr. Holcomb nor anyone else had any right to maintain an action on the notes. By virtue of the fact, however, that eight of these makers had discharged a common burden for all of them, these appellants acquired the right to enforce contribution against these other makers for their *pro rata* of this burden, and this, we submit, is the only right that they did acquire. This, however, is just exactly what they did not seek by this suit and is just what the court could not have granted under this declaration.

It is a glorious maxim of the law that "there is no right without a remedy," and I think it just as true also that there can be no remedy unless to enforce some right. To determine, therefore, whether this suit can be maintained, we are bound to determine first what appellants rights are. They were co-makers of the note and liable for the payment. They discharged obligations resting on

all of these makers and satisfied these notes—evidencing an express obligation on the part of all of them to pay Mr. Holcomb certain sums of money. Because they did so, natural justice and principles of equity created in their favor the right—not to sue on these notes as holders in due course, but to enforce contribution from their co-makers to the extent of the latter's liability. Their position and the position of a holder in due course have nothing whatever in common, do not arise from the same principle and are not governed by the same rules at all. A "holder in due course" suing on the instrument itself has under the law certain rights which, as we shall hereinafter show, these appellants do not have, and the rights and the remedies of the one are not in anywise the rights and remedies of the other. If this is not so, then there would be no reason for this principle of equity at all.

In 9 Cyc. 794 and 800, on liability, the statement is made that "the right to contribution has its foundation in, and is controlled by principles of equity and natural justice and does not arise from contract; but, although the doctrine so originated, it is now almost universally enforced in courts of law on the theory of an implied contract of contribution existing between parties jointly liable *ex contractu.*"

It is certainly true at this time that contribution can be enforced in the law courts; nevertheless the basis of the right and the foundation of the suit, whenever brought, is just exactly the same—not on the express contract of all, but on that very principle of equity and justice that requires the party sued to bear his part of the common burden. But this right is something that never arises out of the fact that the party, thus discharging the obligation, has acquired and holds it, but from this very principle mentioned in the text which exists just as well in favor of one paying but not becoming the transferee of the paper—that transaction being an immaterial element neither giving nor denying any right or remedy to

the person thus discharging the common burden. *De Paris* v. *Trust Company,* 1 A. L. R. 1352; 6 R. C. L. 1036; *Hunter* v. *Harris,* 63 Or. 505, 127 Pac. 786.

Our own court recognizes the same thing and made the statement in *Dennis* v. *Gillespie,* 24 Miss. 585, that "the right of contribution among sureties rests, not in contract, but in natural equity, on the ground of burden 'and benefit." Again in *Pass* v. *Grenada County,* 71 Miss. 438, we find the statement that "the right of Pass to seek contribution arose upon payment by him of the money, which payment operated to discharge them from an action by the county." The court there held also that the statute of limitations began to run against him at, and not before the time, of such payment by him—which, of course, could not be true if his rights rested on the original contract.

When these appellants paid these notes to Mr. Holcomb, they discharged that obligation and neither he, they, nor any one else could maintain an action on these notes. 7 Cyc. 1023, *Claiborne* v. *Bank,* 2 How. 727; *Lenoir* v. *Moore,* 61 Miss. 400.

If the payee of this note, or the transferees of these appellants, could not maintain an action on the notes against these parties, how on earth can the appellants do so? Those notes evidenced certain obligations and certain liabilities against these makers, and the obligations of one, let us say, was the same as of all the others. Suppose that these notes had been transferred to these parties even before maturity—could they maintain an action on the notes against these other makers?

This question is squarely answered by this court in *Stevens* v. *West,* 1 How. 310, in the negative, discharging his own contract and liability, and he had a right to resort to his proper remedy against the other contracting parties for contribution; but his remedy was not on the special contract, it originated from the fact that he had discharged that contract.

I submit that there is no reason why that case should be overruled and unless it is, appellants cannot maintain this suit.

ETHRIDGE, J., delivered the opinion of the court.

On September 1, 1919, the appellants and appellees jointly and severally gave three notes payable to D. L. Holcomb or bearer due and payable January 1, 1920, January 1, 1921, and January 1, 1922, respectively. On the 13th of May, 1922, the appellants paid the said notes, and Holcomb indorsed on the back of said notes the following:

"Transferred without recourse to C. O. Aven, B. F. Smith, A. J. Curry, J. W. Hayden, T. T. Gee, W. T. Turner, L. H. Hightower, C. V. Gibson, this May 13, 1922. D. L. Holcomb."

On the 17th day of June, 1922, these parties to whom said transfer was made brought suit against the appellees, six in number, the declaration, after formal parts, being as follows:

"That on September 1, 1919, the plaintiffs and the defendants executed three certain promissory notes to D. L. Holcomb, the first of said notes being in the sum of five hundred and eighty dollars due January 1, 1920, the second being for one thousand, two hundred thirty-six dollars and sixty-five cents due January 1, 1921, and the third being for one thousand, three hundred ten dollars and eighty-four cents, due January 1, 1922, all of said notes bearing interest after maturity at the rate of six per cent. per annum until paid, and all of said notes providing for attorney's fees of ten per cent, upon the amount due if placed' in the hands of an attorney for collection. Copies of said notes are attached to this declaration as Exhibits A, B, and C hereto and made a part hereof as if copied herein in words and figures.

"Plaintiffs further show unto the court that in due course all of said notes matured, and the payee, D. L.

Holcomb, demanded payment thereof, whereupon the plaintiffs paid' said notes, the defendants having refused to pay any part thereof, and said notes were transferred to plaintiffs without recourse by said D. L. Holcomb, and plaintiffs further allege that they are the holders of the said notes in due course for valuable consideration and sue thereon as said holders.

"Plaintiffs further show unto the court that both plaintiffs and defendants were equally liable on said notes, that the defendants refused to pay any part thereof, and that plaintiff. had to pay the said notes in order to protect themselves against expense and useless litigation.

"Plaintiffs further show that the liability of each of the plaintiffs and defendants was one-fourteenth of the amount of the notes, and that the joint liability of the defendants to these plaintiffs is six-fourteenths of the amount due.

"Plaintiffs further allege that all of the parties to the said notes were joint and comakers, and that none were indorsers thereof.

"Plaintiffs further show unto the court that the defendants are now due to the plaintiffs six-fourteenths of the note marked Exhibit A, which is the amount of two hundred fifty-five dollars and seventy-two cents to January 1, 1922, plus ten per cent. of said sum as attorney's fees, and that defendants are further indebted to the plaintiffs for six-fourteenths of the amount of the note marked Exhibit B, which is the sum of five hundred, seventy-seven dollars and sixty-eight cents to January 1, 1922, plus ten per cent. of said amount as attorney's fees. And plaintiffs further show to the court that the defendants are further indebted to the plaintiffs in the sum of six-fourteenths of the note marked Exhibit C, which is the sum of five hundred, seventy-eight dollars and sixty-four cents to January 1, 1922, plus ten per cent. thereof as attorney's fees. And plaintiffs further show

that defendants are liable for interest on each of the said sums at the rate of six per cent. per annum from the date of the filing of this declaration until paid. Plaintiffs further allege that defendants refuse to pay said amounts, although often requested so to do, to the damage of the plaintiff in the sum of one thousand, four hundred twelve dollars and four cents, and to the further damage of the plaintiffs in the sum of one hundred forty-one dollars and twenty cents as attorney's fees.

"Whereupon plaintiffs bring this suit and demand judgment of the defendants in the sum of one thousand four hundred twelve dollars and four cents, with interest thereon from the date of the filing of this declaration at the rate of six per cent. per annum until paid, and demand further judgment of the defendants in the sum of one hundred forty-one dollars and twenty cents as attorney's fees, as provided for in said notes, together with all the costs of this suit."

The said notes with the said indorsements were made exhibits to the declaration. Three of the defendants, W. D. and J. F. Singleton and W. T. Fielder, demurred to this declaration, the grounds of demurrer being as follows:

"(1) Because plaintiffs cannot maintain this suit against defendants on the notes referred to and made a part of their declaration, nor any part thereof.

"(2) Because the declaration shows that said notes have been paid in full by the plaintiffs, and suit thereon cannot be maintained against these defendants.

"(3) Because the declaration states no cause of action against these defendants, or either of them.

"(4) Because plaintiff's rights, if any they have, against these defendants, are not maintainable in the form of suit resorted to herein, and such a suit cannot be maintained in, or entertained by, this court."

This demurrer was sustained, exception taken, and the declaration was dismissed without prejudice, from which this appeal is prosecuted.

It seems to be the law of this state that the payment of the note to the holder thereof by one of the joint and several makers operates as a payment of the note unless the payment be made "for honor" under the Negotiable Instrument Law, and a certificate in accordance with that act be made by a notary public or other officer. However, the payment of the note by some of the joint makers does not extinguish the liability of the other makers for a contribution to those who pay the note. And in our opinion the declaration above quoted sets out all of the necessary facts necessary to be stated to show a right of contribution. It states all of the facts that a formal pleading for a contribution would state, and, although it makes the notes exhibits to the declaration and a part thereof, and states that the plaintiffs are holders in due course, yet this statement, taken in connection with the other statements in the declaration, shows clearly and unmistakably that the rights that the plaintiffs are seeking in the suit are to recover from the defendants their proportion of the joint debt made by the plaintiffs and the defendants jointly and severally.

Section 729, Code of 1906 (section 512, Hemingway's Code), provides:

"The declaration shall contain a statement of the facts constituting the cause of action, in ordinary and concise language, without repetition; and if it contain sufficient matter of substance for the court to proceed upon the merits of the cause, it shall be sufficient; and it shall not be an objection to maintaining any action that the form thereof should have been different."

Section 722, Code of 1906 (section 505, Hemingway's Code), provides that—"The nonjoiner or misjoiner of plaintiff shall not be objected to by the defendant at the trial, unless he give written notice thereof with his plea, stating the name of the person alleged to be omitted or improperly joined; and the court or judge, at any time, before trial of the issue, whether of law or fact, may

allow the declaration and writ to be amended so as to obviate the objection, upon such terms as may be proper."

Section 723, Code of 1906 (section 506, Hemingway's Code), provides:

"The nonjoinder or misjoinder of a defendant in any action upon contract shall not be objected to by a defendant on the trial of the cause unless he give written notice thereof with his plea, stating the name of the person alleged to be committed or improperly joined; and upon such notice being given, the court or judge, at any time before the trial of the cause, may allow an amendment to the pleading so as to obviate the objection, upon such terms as may be proper."

We do not think that the misjoinder of either the plaintiffs or the defendants can be raised by demurrer, and, if it is raised by plea, the court may allow any proper or necessary amendment necessary to bring the cause to trial between the parties; any necessary amendment being expressly permitted by section 775, Code of 1906 (section 558, Hemingway's Code). And on the trial of the cause as many verdicts or judgments may be rendered as may be necessary under sections 813 and 814, Code of 1906 (section 601 and 602, Hemingway's Code). These sections in full read as follows:

"601. Judgments may be rendered for or against one or more of several plaintiffs, or for or against one or more of several defendants; and in such cases the verdict shall be as the right may appear among the several parties to the action, and shall state separately any amount allowed to any of the parties.

"602. Such and so many verdicts and judgments—joint, separate and cross—as may be necessary to the adjustment of the rights of the several parties may be rendered in the same action."

In our opinion it was the object of the legislature in the enactment of these several statutes to materially change the common-law procedure and to administer justice according to the rights of the parties, and to prevent the

sending of the litigant from one court to another according to the technical rules of the common law. The court, at common law, had no power to render more than one judgment, and consequently did not have the power to entertain a suit which required a number of different rights to be settled. The object of the last two statutes was to correct this and to confer such power; consequently the common-law objections can no longer be considered. The appellees concede that the circuit court has jurisdiction to entertain a suit for contribution and that plaintiffs do not have to resort to the court of equity for that purpose. They contend, however, that the suit here is a suit on the notes, and that such a suit is different in substance from a suit for contribution. In other words, in the language of the fourth ground of demurrer that the plaintiffs' "rights, if any they have, against these defendants, are not maintainable in the form of suit resorted to herein, and such a suit cannot be maintained in, or entertained by, this court." If the plaintiffs are entitled to contribution, and if such right may be enforced in a circuit court, which we think can be done, then a demurrer is not sustainable on the theory that the form of the action to secure the same right should have been different: The right to contribution springs from the joint and several obligations; that is to say, the right is rooted in the obligation, and but for the obligation would not exist. That being true, the right of each plaintiff to have a judgment against each defendant as may be necessary to care for the proportion of liability due by such defendant to such plaintiff may be enforced in the circuit court, and under the statutes above referred to as many judgments may be entered as may be necessary to protect the respective rights of the several parties to the suit.

It follows that the judgment of the court below will be reversed, and the cause remanded for further proceedings.

*Reversed and remanded.*

SYKES, J. (dissenting).

In my opinion the demurrer to the declaration was properly sustained. The declaration is predicated upon the fact that the plaintiffs are the holders in due course of the notes and sue upon them as such holders. Plaintiffs and defendants were joint makers, and when the notes were paid by the plaintiffs they were transferred to them. The suit is not for the entire amount of the notes, but for the *pro rata* share of the defendants, based, however, upon the fact that plaintiffs are the holders in due course of the notes.

It is the contention of the appellants, as shown by their brief, that they are entitled to maintain the suit as holders because of section 2169, Hemingway's Code (section 2682, Code of 1906). That section reads as follows:

"In all cases of joint or joint and several indebtedness, the creditor may settle or compromise with and release any one or more of such debtors; and the settlement or release shall not affect the right or remedy of the creditor against the other debtors for the amount remaining due and unpaid, and shall not operate to release any of the others of the said debtors; and all mortgages or securities for the said indebtedness shall remain in full force against the debtors not released, in favor of the creditor, and also in favor of such of the debtors as may be entitled to contribution, payment, or reimbursement from others of said debtors, and the right of payment, contribution or reimbursement, as among themselves, shall not be affected by this section; and if any debtor, so released, shall have paid more than his ratable share of the whole debt, the whole amount paid by him shall be credited, and if less than his ratable share, then the full amounts of his ratable share shall be credited, and the other debtors shall be liable for the residue."

It is unnecessary to analyze this section, because the majority opinion does not hold that the suit can be maintained under it. In my opinion this section does not authorize a suit of this kind.

The plaintiffs were comakers of the notes sued on. When they paid these notes, the indebtedness evidenced thereby was extinguished, and neither they nor any one else could then maintain a suit on the notes. *Stevens* v. *West,* 1 How. 310, 29 Am. Dec. 630; *Lenoir* v. *Moore,* 61 Miss. 400; *Claiborne* v. *Bank,* 2 How. 727.

The rule is thus succinctly stated in 7 Cyc. 1023:

"Where a note is paid by one of several joint makers to the payee or holder, it will operate as an extinguishment of the note as to the latter. . . ."

It is true that under the facts stated in the declaration the plaintiffs would be entitled to contribution were a suit properly brought upon this theory. Even if we view the facts stated in the declaration as also an attempt to state a cause of action for contribution, the demurrer still should have been sustained. The suit is based on promissory notes, express promises to pay. A suit for contribution is based on an implied promise arising from the payment of the notes by several of the makers, whereby a right to contribution arises because of the equity of the situation from those makers of the note who fail to pay their *pro rata* share. This right of contribution does not arise until the note had been paid and the express indebtedness thereby extinguished. Originally the right of contribution was purely an equitable right given because of the equities of the situation. A modern view of this doctrine, however, is to the effect that a suit for contribution may be maintained in a law court upon the theory that by virtue of the payment of the note an implied promise to pay his *pro rata* share is given in favor of those extinguishing the indebtedness. 9 Cyc., p. 794; *De Paris* v. *Trust Co.,* 7 Boyce (30 Del.) 178, 104 Atl. 691, 1 A. L. R. 1352; 6 R. C. L. 1036; *Hunter* v. *Harris,* 63 Or. 505, 127 Pac. 786.

The declaration clearly attempts to state a cause of action based on the notes, which is an express promise to pay. It attempts to treat the note as not extinguished, but still as an existing indebtedness. The theory of con-

tribution, upon the other hand, treats the note as having been extinguished and paid, and by virtue of this extinguishment of that right an implied promise therefrom arises. In my judgment this is an attempt to state in one count of a declaration two separate, independent and antagonistic causes of action. This court has repeatedly held since the enactment of the statute referred to in the majority opinion of the court that this cannot be done. *Town of Hazelhurst* v. *Cumberland Tel. Co.,* 83 Miss. 303, 35 So. 951; *Railroad Co.* v. *Abrams,* 84 Miss. 456, 36 So. 542.

This declaration does not merely present a misjoinder of both parties plaintiff and parties defendant, but a misjoinder in one count of separate, independent, distinct, and antagonistic causes of action.

The declaration, in my opinion, is further faulty because a liability for contribution is a separate, and not a joint, liability. In order to maintain actions for contribution in a court of law, each plaintiff should separately sue each defendant for the amount due him in this case. That this is a separate liability is laid down in Cyc., Corpus Juris, and Ruling Case Law. See, also *Falley* v. *Gribling* (Ind. Sup.), 22 N. E. 723; *Yore* v. *Yore,* 240 Mo. 451, 144 S. W. 847; *Hoyt* v. *Tuthill,* 33 Hun (N. Y.) 196; notes in 10 Am. St. Rep. 644, and 98 Am. St. Rep. 46.

In order to avoid this multiplicity of suits, these plaintiffs could maintain a suit against these defendants in a court of equity, because the causes of action arise from the same transaction.

Entertaining these views, I feel compelled to express them in this dissent.

SMITH, C. J. (dissenting). I am of the opinion that the demurrer was properly sustained for the reason that sections 813 and 814, Code of 1906 (Hemingway's Code, sections 601 and 602), have no application here, and that consequently a joint action at law for contribution against all of the parties liable therefor cannot be maintained, but each must be sued separately. 13 C. J. 834.