ETHRIDGE, Chief Justice
(dissenting):
This case has been fully tried on the-merits, and is now presented to this Court. All of the judges are in agreement that the Board of Education of Forrest County is entitled to the funds in question in a properly brought suit. Yet the controlling opinion, on the cross appeal of the members of the Board of Supervisors, reverses and dismisses the application of the Board of Education for writ of mandamus, because the petition was not brought in the name of a nominal party, the State, through its attorney general or a district attorney. The result of this highly technical disposition of this litigation will be to delay for another year ultimate judicial decision of an important public question. The controlling opinion adds unnecessary complexities to the law of mandamus, by declining to apply, the doctrine of harmless error, and by utilizing an unnecessarily literal interpretation of the statute. For these reasons, I dissent from the dismissal of this suit.
I.
The controlling opinion holds that the suit should be dismissed, because of the non-joinder of a necessary party, the State of Mississippi. Appellees raised the defense of nonjoinder in the trial court by demurrer. Yet it is well settled that under the statutes the defense of nonjoinder or mis-joinder cannot be raised by demurrer. Aven v. Singleton, 132 Miss. 256, 96 So. 165 (1923). Mississippi Code 1942 Annotated section 1457 (1956) requires a defendant to give plaintiff written notice by plea “stating the name of the person alleged to be omitted or .improperly joined,” and the court before trial may then allow the suit to be amended to obviate the objection. See also Miss.Code 1942 Ann. § 1458 (1956). The purpose of this statute was to eliminate the type of technical issue on appeal which has been raised on the cross appeal here. Although appellees did not plead nonjoinder properly, the controlling opinion permits them to take advantage of this failure, and thus frustrates the purpose of code section 1457.
Aven v. Singleton, 132 Miss. 256, 96 So., 165 (1923), describes the legislative intent thus:
In our opinion it was the object of the legislature in the enactment of these sev *896 eral statutes to materially change the common-law procedure and to administer justice according to the rights of the parties, and to prevent the sending of the litigant from one court to another according to the technical rules of the common law. (Id. at 266-267, 96 So. at 167).
It is suggested that the Board of Education of Forrest County is a non-existent legal entity, and that therefore there was simply no person or entity to .serve as petitioner. Yet the board of education of each county is created by statute to supervise and administer the county school system. Miss. Code 1942 Ann. § 6271-01 (Supp.1966). It is authorized to employ an attorney to represent it. Miss.Code 1942 Ann. § 6252-12 (Supp.1966). Moreover, a county board of education has been recognized as a party litigant in several cases. Adams County Bd. of Educ. v. State Educ. Fin. Comm., 229 Miss. 566, 91 So.2d 524 (1956) (appeal from chancery decree); Dollar v. Board of Education, 227 Miss. 432, 86 So.2d 489 (1956) (taxpayer’s suit against county school board); Hopkins v. Lee, 217 Miss. 624, 64 So.2d 759, suggestion of error overruled, 217 Miss. 624, 65 So.2d 838 (1953) (appeal by members of county school board testing annexation of territory). Accordingly, the statutes and the decisions recognize and uphold the capacity of a county board of education to be a litigant. I suggest that under these circumstances it is a fiction to assert that the Board of Education of Forrest County, as such, cannot be a party to litigation.
White v. Miller, 159 Miss. 598, 132 So. 745 (1931), affirmed a judgment for the petitioner state tax collector in a mandamus proceeding. It was there contended that he was not authorized to prosecute the petition, but the Court held “the rule seems to be well settled that ‘public officers or boards may bring mandamus to compel the performance of official duties * * * which is necessary to enable them to perform their own duties.’ ” Id. at 603, 132 So. at 746.
To the same effect is 55 C.J.S., Mandamus § 45, at 75 (1948), which, citing White v. Miller, states that public boards may maintain mandamus proceedings to compel other officers to perform ministerial acts “which are necessary to be performed in order to enable such * * * board to perform its own duty.” Also in accord is 35 American Jurisprudence, Mandamus section 322 (1941).
A county board of education, in each county of the state, was created to supervise and administer the county school system and school funds. Miss.Code 1942 Ann. § 6271—01 (Supp.1966). In accord with White v. Miller, the Board of Education, in my opinion, properly brought this action to enforce the performance of ministerial acts necessary to be done in order to enable .it to perform its own duties.
Moreover, in the posture of this case, the harmless error doctrine is applicable. Mississippi Supreme Court Rule 11 (1967) provides :
No judgment shall be reversed * * * for error as to the matter of pleading or procedure, unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice.
The real party in interest, for the purpose of this action, is the Board of Education of Forrest County. The case involves important issues as to the use of public school funds; .it has been decided by the trial court and presented to this Court. Sustaining the cross appeal merely produces delay in disposition of this public issue, by the technicality of processing the petition through the attorney general or a district attorney.
To warrant reversal, two elements must be shown: error and injury to the party appealing. Even if it is assumed that permitting this suit to proceed without being brought by the attorney general or a district attorney is error, no injury whatever to the party cross appealing has been shown. The *897 case was fully and fairly tried with the limited issues clearly presented. Hence any assumed error is harmless and purely formal in nature. 5 Am.Jur.2d Appeal and Error §§ 776, 793 (1962); SA C.J.S. Appeal and Error §§ 1676, 1681 (1958). Moreover, the harmless error rule is applicable to mandamus proceedings. Trustees of Geeville Consol. School v. Gordon, 185 Miss. 739, 189 So. 97 (1939); 35 Am.Jur. Mandamus § 394, at 130 (194D; 55 C.J.S. Mandamus § 373g (1948).
Hancock County v. State Highway Commission, 188 Miss. 158, 193 So. 808 (1940), involved a judgment dismissing an appeal. The trial court also had dismissed the petition for mandamus. Hancock County did not overrule White v. Miller, 159 Miss. 598, 132 So. 745 (1931), and did not involve a cross appeal or the harmless error doctrine.
In 3 Davis, Administrative Law Treatise section 24.03, at 402 (1958), there is a perceptive analysis of the unnecessary technicalities and complexities which the courts in various states have engrafted upon mandamus. Davis concludes:
Any clear statement of the law of mandamus in the state courts is sure to be inaccurate because the law is unclear and variable not only from state to state but usually within each jurisdiction; the propositions to which the courts pay lip service are unclear and variable, and, what is worse, the courts in their holdings commonly violate the principles they enunciate. The judicial striving is of course toward a procedural system which will provide a workable and sensible system. * * * Anyone who can see the law of mandamus .in perspective — as judges seldom have occasion to do because of their focus upon individual cases — is sure to detect the futility of the continued warfare between the good sense of the judges and the harmful complexity of the doctrine. The obvious need is for a release of judicial common sense from the authority of technical intricacies.
In short, I dissent from the controlling opinion, because appellees did not properly plead nonjoinder as provided by statute. White v. Miller is directly in point, and the posture of this case calls for application of the doctrine of harmless error. Davis’ observations about mandamus are assuredly strengthened by the method of disposition of this case.
II.
Since in my opinion there is no merit in the cross appeal, it is necessary to comment upon the direct appeal, in order to define my view of an appropriate disposition of the case. The controlling opinion erroneously declines to render a judgment on the issue presented on the direct appeal, although I understand that all of the judges think that in an action brought through the State the appellant would be entitled to the relief sought. The case developed in the following manner.
In July 1967, the Forrest County Board of Supervisors advised the State Department of Education that although its past policy had been to allocate one-half of its severance tax refund monies to the Forrest County School District, it had concluded that because of the needs of the County road and bridge funds, it would distribute all future severance tax refund monies to the road and bridge funds to the exclusion of the Forrest County School District.
The issue is whether the statutes require a board of supervisors to allocate one-half of oil and gas severance taxes returned to the producing county by the state to the county board of education to be applied to the county’s minimum education program, or whether the board of supervisors may in its discretion allocate all or part thereof to other lawful purposes.
The Board of Education of Forrest County, Mississippi (also constituting and being the Board of Trustees of the Forrest County School District), began this action by filing a petition for writ of mandamus in the Circuit Court of Forrest County against W. U. Sigler and the other members of the Board *898 of Supervisors of Forrest County. There are no factual issues, so the case was submitted to the circuit court in vacation on a stipulation of facts, and the petition was denied.
In 1944 the legislature levied a privilege tax upon every person engaged in the business of producing or severing oil. Miss. Code 1942 Ann. § 9417-02 (1952). Such severance, taxes are required to be paid into the state treasury to the credit of the general fund and to the county .in which the oil was produced, in designated portions. A porportionate amount of the funds returned to the county are allocated to its municipalities. Miss.Code 1942 Ann. § 9417-03 (1952). The last paragraph of code section 9417-03 provides:
The balance remaining of any amount of tax returned to the county after the allocation to municipalities, shall be divided among the various maintenance and bond interest funds of the county, school districts, supervisors’ districts, and road districts, in the discretion of the hoard of supervisors, and such board shall make the division in consideration of the needs of the various taxing districts. The funds so allocated shall be used only for such purposes as are authorized by law. (emphasis added).
Similar provisions for distribution of the gas severance tax were established in 1948. Miss.Code 1942 Ann. §§ 9417.5-02, 9417.5-03 (1952). The question is whether subsequent statutes have changed and restricted the discretionary power of the board of supervisors in allocating these severance tax refunds.
At an extraordinary session in 1953, the legislature enacted comprehensive legislation reorganizing the school districts of the state, and establishing a minimum public education program and methods of financially supporting it. Mississippi Code 1942 Annotated section 6248-04 (Supp.1966) (Mississippi Laws 1953 Extraordinary Session chapter 14, section 4) provides:
Determining the state funds needed annually to support the minimum education program. — (a) The total state funds needed annually by each county, excluding the separate school districts therein, for the support of the minimum education program shall be the cost of the minimum education program for that county as determined in Section 2 [§ 6248-02] of this act less the minimum local ad valorem tax effort required of that county, as provided in Section 3 [§ 6248-03] of this act, less the poll tax collection in that county for the preceding year, and less one-half of all refunds of severance taxes made by the state to the county for the preceding year-, provided, however, that in no case shall the total state funds provided in any year for the support of the minimum education program in any county be less than forty per cent of the cost of the minimum education program for that county as determined by Section 2 [§ 6248-02] of this act, and in the event the workings of this proviso should result in a lesser local contribution for the support of the minimum education program of the county than is otherwise required by this section then the local funds otherwise required for the support of said minimum education program shall be reduced or eliminated in the following order of priority: (1) Severance taxes; (2) Poll tax collections, and (3) the minimum local ad valorem tax effort, (emphasis added).
This section designates the total state funds needed by each county for support of the minimum education program. It is the total cost of the program for the county, less ad valorem taxes and poll tax collections, both of which are traditionally for school purposes, and less one-half of all refunds of severance taxes made by the state to the county. In short, under section 6248-04 state funds provide much of the cost of the minimum education program in a county, but the county must utilize the ad valorem and poll tax collections, and also one-half of all refunds of severance taxes *899 by the state to the county. These factors are strong indications of legislative intent to establish not merely a formula for disbursal of state funds, but designation for school purposes of these three types of revenue received by the county.
Section 6248-15, Mississippi Code 1942 Annotated (Supp.1966), also enacted in the same chapter of the extraordinary session laws of 1953, is a general repeal provision:
Sections 6566, 6567, 6568, 6569, and 6570, Mississippi Code of 1942, as amended, chapter 374, Laws of 1950, and all other laws and parts of laws in conflict with the provisions of this act are hereby repealed.
Although a general repeal of inconsistent laws essentially involves a determination of whether there is an implied repeal, rather than an express repeal, it reflects a legislative intent and undertaking to repeal statutory provisions which are inconsistent with the act of which it is a part. 82 C.J.S. Statutes § 285 (1953); 1 Sutherland, Statutory Construction § 2013 (3d ed. 1943). It is true that the repeal of statutes by implication is not favored. Seward v. Dogan, 198 Miss. 419, 21 So.2d 292 (1945); 82 C.J.S. Statutes § 288 (1953). However, where two legislative acts are repugnant to or are in conflict with each other, the last one enacted will govern, control or prevail, and will supersede and impliedly repeal the earlier act, although it contains no express repealing clause. Implied repeal particularly applies where both statutes relate to the same subject, and the latter act is inconsistent with the former. Craig v. Dun & Bradstreet, Inc., 202 Miss. 207, 30 So.2d 798 (1947); Burdeaux v. Cowan, 182 Miss. 621, 181 So. 852 (1938); 82 C.J.S. Statutes § 291 (1953).
Appellees argue that repeal of a statute by implication violates Mississippi Constitution section 61, which states: “No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length.” However, that provision has no application to an amendment or repeal pro tanto by implication. Sartin v. Prentiss County, 156 Miss. 46, 125 So. 563 (1930).
The earlier statutes, code sections 9417-OS and 9417.5-03, placed discretion in the board of supervisors in the division of severance tax refunds among school districts and supervisors and road districts. However, the quoted later act, section 6248-04, expressly provides that the “total state funds needed, annually by each county” for the support of the education program shall be its cost for that county, less the required ad valorem tax effort, poll tax collections, and one-half of severance tax refunds to the county for the preceding year, (emphasis added). This, I think, is more than a definition of a mere optional formula for the board of supervisors to utilize. It specifically designates the traditional, school-support revenue sources of ad valorem and poll taxes, and also one-half of severance tax refunds.
Moreover, the title to chapter 14, Mississippi Laws 1953 Extraordinary Session, of which section 6248-04 is a part, states that it is an act to establish a minimum education program, and “to provide an equitable plan for the financial support thereof.” Section 6248-04 is a legislative definition of an essential part of that plan. It is wholly inconsistent with part of sections 9417-03 and 9417.5-03, the earlier acts, insofar as they pertain to division of severance tax refunds among “school districts.” Moreover, this inconsistency and repugnancy between the 1953 act and the earlier one is plain, unavoidable, and cannot be reconciled.
If there were any doubt under the 1953 act as to whether it impliedly repealed the prior discretionary power of the board of supervisors in allocating to the schools one-half of all severance tax refunds to the county, chapter 45, Mississippi Laws 1955 Extraordinary Session, eliminated that doubt, in our opinion. It is now codified as section 6248-04.5, Mississippi Code 1942 Annotated (Supp.1966). The title of chapter 45 defined the legislative purpose and *900 designated the permissible use of one-half of severance tax refunds, as follows:
AN ACT to provide that where one half , of the Severance Taxes returnable to any county by the Tax Commission and to be applied to the Minimum Educchtion Fund under Section (4a), Chapter 14, Laws of the Extraordinary Session of 1953, is less than one half of all such refunds of Severance Taxes made by the State to the County for the preceding year, the County may borrow any such deficit and repay the loan with interest out of a special levy of taxes the next succeeding year, irrespective of the maximum tax limitation of the county, and for related purposes, (emphasis added).
Section 6248-04.5, the 1955 act, is short, consisting of only two sections. The first paragraph provides:
If, during any county fiscal year, it appears that one half (Y) of all severance taxes returned and to be returned to that county from the state tax commission, to be applied to the minimum education fund under the provisions of section 4(a), chapter 14, laws of extraordinary session of 1953 [§ 6248-04], is or will be less than one half (Y) of all severance taxes returned to that county during the preceding year, then, and only in that event, the board of supervisors of any such county may borrow under the terms of this act a sum not to exceed the amount of any such deficit. The purpose of any such loan shall be to guarantee the payment of the county’s local contribution to the minimum education program in an amount equal to one half (Y) of the severance taxes received from the state during the previous year. Unless it shall be necessary ’to borrow such funds in order to defray the above expense, no funds may be borrowed under this act; and, if such funds are borrowed, they shall be used exclusively for the purposes specified herein, (emphasis added).
If the school portion of returned severance taxes (one-half of the total returned) is less than the amount received for the preceding year, the above paragraph authorizes a county board of supervisors to borrow a sum not to exceed the amount of that deficit. This loan, if used, is for the purpose of guaranteeing the payment of the “county’s local contribution” to the education program; and such funds so borrowed must be “used exclusively for the purposes specified herein,” namely, support of the minimum education program of the county.
The second paragraph of section 6248-04.5 limits the interest rate and defines the methods of repaying the loan. The third and final paragraph manifests'a legislative intent to earmark one-half of severance taxes returned to a county for the school program. It states:
It is the intention of this act that funds borrowed under its provisions be used exclusively for the support of the minimum education program in that county and that no funds obligated from the return of severance taxes to the county be released or relieved from such obligation due to making such loan and that no funds paid or payable to the county from refunds of severance taxes to the county earmarked by section 4(a), chapter 14, laws of the extraordinary session of 1953 [§ 6248-04], be used for any purpose other than the support of the minimum education school program in said county. (emphasis added).
In this instance, therefore, the legislature expressly defined its intention. The funds borrowed are to be used exclusively for support of the county school program, no returned severance taxes so obligated shall be released from the obligation because of the loan, and no refunded severance taxes paid to the county, “earmarked” by the 1953 act, shall be used “for any purpose other than the support of the minimum education school program in said county.” Here the legislative intent is clear and unequivocal. The effect of the 1953 and 1955 acts is by necessity to repeal impliedly those parts of sections 9417-03 and 9417.5-03 *901 which gave the board of supervisors discretionary power in allocating severance tax refunds to “school districts,” and to thereafter require that one-half of all refunds of severance taxes made by the state to the county be used to support the minimum education school program.
In summary, the 1953 and 1955 acts discussed above manifest a legislative intent to earmark one-half of all oil and gas severance taxes returned to the county by the state to the board of education to be applied to the county’s minimum education program. These statutes are repugnant to the earlier legislation in code sections 9417-OS and 9417.5-03, which granted the board of supervisors discretion in allocation, and thus to that extent the later statutes impliedly repealed the earlier. Jackson Municipal Airport Authority & DHM, Inc. v. Shivers, 206 So.2d 190 (Miss.Sup.Ct. Jan. 8, 1968); Ascher & Baxter v. Edward Moyse & Co., 101 Miss. 36, 57 So. 299 (1911).
For these reasons, I would reverse the judgment of the circuit court dismissing the petition for writ of mandamus, and render judgment here on the direct appeal for the appellant.
GILLESPIE, P. J., and SMITH and ROBERTSON, JJ., join in this dissent.