BURDEAUX et al. v. COWAN, DIST. ATTY., et al.

(Division B. June 13, 1938. Suggestion of Error Overruled July 21, 1938.)

[181 So. 852. No. 33303.]

J. F. Galloway and Charles R. Galloway, both of Gulf-port, for appellants.

W. L. Guice, of Biloxi, Geo. R. Smith and S. E. Morse, both of Gulfport, for appellees.

Argued orally by **J. F. Galloway**, for appellants, and by **W. L. Guice** and **S. E. Morse**, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal from the judgment on a petition for a mandamus to compel the Chancery Clerk of Harrison county to transfer the sum of $67,695.03 from the road protection bond and interest sinking fund to the road funds of said county. It appears that $67,695.03 had been collected and paid into the road protection fund, and that the Board of Supervisors of the county, by an order entered at the April term, 1938, had ordered the funds to be transferred from the road protection bond and interest sinking fund of the county to the road fund thereof; that the Chancery Clerk had advised the board

that he would not make such transfer unless directed to do so by a court of competent jurisdiction, and that in his opinion the board was violating the budget law, as no provision had been made therein for expenditure of the sum of money ordered to be transferred. Whereupon the Board of Supervisors, on the relation of the District Attorney, filed a petition for mandamus, to compel the clerk to make such transfer.

It appears that the Board of Supervisors of Harrison county, acting under chapter 319 of the Laws of 1924, had issued bonds under said chapter for the construction of a wall to protect the public roads along the water front from damage by the waters of the Mississippi Sound in case of high winds and storm. These bonds bore date of July 1st, 1926, the issue being for the total amount of $1,400,000.00. On their face the bonds recite: ''This Bond is one of a series of a total issue of One Million Four Hundred Thousand Dollars of like date and tenor, except as to number and maturity, authorized to be issued for the purpose of providing funds with which to build and contruct a system of Road Protection along that portion of the Beach of Harrison County, Mississippi, where said Road Protection is not already provided for or under construction, and is issued under and pursuant to and in full compliance with the Constitution and statutes of the State of Mississippi, including among others, Chapter 207 of the Laws of Mississippi of 1920 and of Chapter 319 of the Laws of Mississippi of 1924, and under and pursuant to proceedings of the Board of Supervisors of said County, duly and regularly had and adopted. This bond and the interest thereon, together with the other bonds and coupons forming a part of this issue, are payable out of a tax imposed and collected on gasoline, naphtha, alcohol or other substance used in the operation of automobiles or other like vehicles, and on motor vehicles, automobile drivers privilege licenses, and an ad valorem tax on all of the taxable property of and within Harrison County, Mississippi, all as

authorized and provided in said Chapter 319 of the Laws of Mississippi of 1924.''

On the trial of the case it was agreed by the parties thereto that the net amount of automobile, road and bridge privilege tax, damages and temporary permits, reported to the Chancery Clerk, who is also clerk of the Board of Supervisors, and accounted to the auditor of the said county by the tax collector thereof for the year 1937, was $67,695.03, for which receipt warrants were issued; that the amount was deposited in the county depository, in the road protection bond and interest sinking fund of the county, which shows the sum now on hand to be $203,191.53 in cash. It was also agreed that the sum of $67,695.03 can be transferred without creating a deficiency in the said road protection bond and interest sinking fund; and that if the sum is transferred there will remain in such fund a sufficient amount to meet principal and interest of such bonds as they mature. It is further agreed that the taxes derived from the sale of gasoline averages approximately $25,000.00 each month in Harrison county; and also that the said sinking fund owns notes of the county in the sum of $350,000.00, issued under the authority of Chapter 274 of the Laws of 1936.

Prior to the order transferring the funds from the sinking fund to the general county road fund, the Board of Supervisors requested an opinion from the Attorney General as to their authority so to do, and were advised by that office that such fund could be so transferred and used, provided it did not create a deficit in the funds collected under the provisions of Chapter 319, Laws of 1924, and that under the facts as stated, the funds should have been paid into the county road fund, instead of the sinking fund.

Chapter 319, Laws of 1924, was approved on the 9th day of April, 1924, and chapter 116, Laws of 1924, was approved on the 12th day of April, 1924. It is argued in the briefs that the two acts passed the legislature on the same day, but were approved on different days. It is

conceded therein that the question for decision is whether chapter 116 prevails over chapter 319 in reference to the privilege taxes involved in the litigation. Of course an act becomes effective from the date of its approval by the Governor, or on the date on which the Governor's opportunity to sign or veto the act shall expire without his acting one way or the other; whereupon such act supersedes the provisions of the former act, if there be a conflict therein. Of course, statutes are to be construed, if reasonably possible, in such manner as to harmonize with each other, not for one to repeal another, unless the conflict between them cannot reasonably be reconciled.

Chapter 319, sections 8, 9 and 10 thereof, provides that when any county issues bonds under the act for the construction, improvement or protection of any state highway, there shall be paid into the treasury of such county 50% of any license tax which would otherwise be paid into the state highway fund collected by the state in such county on motor vehicles or the drivers thereof; and 50% of any excise tax levied in such county by the state on gasoline, naphtha, alcohol or other fuel or substance ordinarily used for the operation of automobiles or like vehicles or machines operated by motor power, sold in or shipped into such county for sale therein, which would otherwise be paid into the state treasury to the credit of the state highway fund, or a sufficiency of the amount designated therein to meet the interest and annual sinking fund on such bonds, such funds to be applied toward the liquidation of the interest and sinking fund accruing annually on such bonds, the other 50% to go into the state treasury to the credit of the state highway commission; and if such taxes in any year should be insufficient to cover such interest and sinking fund, the deficiency therein shall be supplied out of any other funds collected by the state in such county, and allotted by law to such county for road purposes, and paid into the treasury thereof, and of funds provided for in sections 9 and 10 of such act; providing that nothing therein

shall be construed as a guarantee on the part of the state to pay the interest or principal on any bonds issued thereunder.

Section 9 of this chapter levies in such counties as have issued bonds under the act an excise tax not to exceed two cents per gallon, in addition to any such tax levied and collected by the state therein, for the sale of gasoline, naphtha, alcohol or other fuel or substance ordinarily used for the operation of automobiles or other vehicles and machines operated by motor power; and provides that funds so collected shall be applied first toward any deficiency in the amount collected by the state, and paid to such county by the state, which may be necessary for the liquidation of the interest accruing on, and to provide a sinking fund for the retirement of such bonds, any overplus to go in the county road fund or district road fund, as the Board of Supervisors may elect. But the taxes thereinbefore provided for, upon the faith of which bonds may be issued, shall be levied and collected annually in an amount estimated to be equal to the interest and sinking fund on said bonds, and shall not, until such bonds, with interest thereon, have been paid, be lowered beyond that amount which is estimated to be necessary to produce annually a sum sufficient to pay interest, and provide for a sinking fund for such bond issue or issues, providing that such tax shall not be in excess of such reasonable sum as may be legally levied and collected.

Section 10 provides that in all cases where bonds are issued under this act, the board may levy and collect a privilege tax on each resident of such county driving an automobile or other motor vehicle on any of the public streets or highways of the county not exceeding two dollars, the amount of which may be varied in case more than one member of a family pays such tax, the funds arising therefrom to be applied in the same manner as funds arising under section nine of this act; and Boards of Supervisors shall have the power, and it shall be the duty of such boards to levy annually on all the taxable

property in such counties, and to collect a special tax sufficient to cover any deficiency, if any occur, in the amount necessary to meet annually such interest and sinking fund.

By section 9 of chapter 116, Laws of 1924, approved on the 12th day of April, 1924, to be effective after April 30th, 1924, it is provided that, ''All such privilege taxes collected shall be placed in the county road fund of the county where collected, and shall be used for the employing of labor and the purchase of materials to maintain repair, reconstruct, or extend the highways in the county, preference being given to designated state highways, except such state highways as have been accepted and taken over by the state highway department, such work to be done under the direction of the county road authorities, with the approval and consent of the board of supervisors.''

It is not always easy to harmonize acts of the legislature, where bills passed at the same session originate in different houses; but they must be so construed as to carry out the entire legislative intent, if this can reasonably be done. It seems clear that the legislature did not intend, taking the two acts together, that funds collected under chapter 319, Laws of 1924, should be held to any further extent than was necessary to take care of the bonds issued, by paying the interest, and creating the necessary sinking fund for their retirement. Funds in excess of this requirement could lawfully be used in building or repairing or constructing roads and bridges of the county. The whole purpose of the two acts together is to provide for proper and adequate road facilities, and for the protection of such highway from devastation by the waters of the sound; and under the agreed statement of facts there are ample funds in the road protection fund, under chapter 319, to meet all requirements of the law as to such bond issues. Chapter 116, to the extent that there is an unavoidable conflict, prevails over chapter 319; but we do not think that it

was the legislative intention, in counties bordering on the coast, with their tide waters, and storms, destructive of roads along the sound, to prevent issuance of road protection bonds which were to be provided for by taxes authorized by law. A reading of the provisions of chapter 319, Laws of 1924, shows that any surplus funds derived therefrom, can and should be applied by the Board of Supervisors on the general county highway fund, giving preference, as provided in that act, to the state highways which have not been taken over by the state highway department.

Taking the statutes together, with the facts above stated, we think it was proper to order the transfer of the funds, as directed by the court below.

The judgment is affirmed.

Affirmed.