DARBY, ETC. *v.* STATE, et al.

No. 40742 February 3, 1958 100 So. 2d 125

*Mize Thompson & Mize,* Gulfport, for appellant.

*George R. Smith, Morse & Morse,* Gulfport; *W. L. Guice,* Biloxi, for appellee.

ROBERDS, P. J.

This is a mandamus proceeding. The petition was filed by Harrison County and its supervisors on relation of the district attorney. The respondent is C. J. Darby in his official capacity as clerk of the chancery court, ex-officio clerk of the board of supervisors and county auditor. In this opinion we will call him the "Clerk."

On July 19, 1957, the supervisors adopted an order directing the Clerk to withdraw from the Road Protection Bond and Interest Sinking Fund of the county, which we will call the seawall fund, and deposit in the County Road and Bridge Fund the sum of $1,021,646.93, proceeds of collections over a number of years of automobile privilege license taxes and from truck and bus privilege taxes. The Clerk declined to do that unless so ordered by a court of competent jurisdiction.

On August 7, 1957, the petition for mandamus was filed in this case. After an extensive hearing, the circuit judge granted the writ directing the Clerk to make the transfer as prayed for in the petition. From that action the Clerk appeals here.

Harrison County is a tidewater county, that is, it borders upon the Mississippi Sound, and its roads and highways are subject to great damage by tides, winds and storms from the Gulf of Mexico. By Chapter 319 of Miss. Laws of 1924, the supervisors of such counties were empowered, and it was made their duty, to issue bonds of such tidewater counties, to erect and maintain sea walls, breakwaters, bulkheads, sloping beaches and other necessary devices to protect and preserve the roads and streets and highways of the counties. Four such bond issues have been made by Harrison County,—June 1, 1925; June 1, 1926; December 1, 1949; and December 1, 1952. The first two issues have been paid except two bonds of $1,000 each, which have not been presented for payment and which appear to be barred by the statute of limitations. The issue of December 1, 1949, was for a Million and a Half Dollars, and that of December 1, 1952, was for a Half Million Dollars. The total of the two issues outstanding is the sum of $1,352,000.00. The last of the outstanding bonds will be due in 1968. In no year, according to the testimony of the Clerk, will an amount greater than $183,875.00 be needed to meet the maturities of the outstanding bonds. If the Clerk made the

transfer as ordered there would remain in the seawall fund about the sum of $600,000. In addition to that, this fund has liquid securities amounting to $228,000, so that at the time of the trial there was available for payment on the bonds, if needed, a total sum of $828,000.

 █ And as a means of raising additional revenue, if need be, the share of the county of the motor vehicle and gasoline taxes, the special excise tax on gasoline, a special tax of $2 upon drivers of motor vehicles, which the county is permitted to levy; and the general power of the supervisors to levy a property tax, to meet maturing bonds, according to the undisputed proof, would amount in the aggregate yearly to many times any amount which could possibly be needed to meet maturing bonds, and, for that matter, to maintain all foreseeable seawall protection for the roads and bridges of the county. Indeed, the Clerk testified that the State, in October 1955, ceased to remit to Harrison County a part of the gasoline tax collected in the county because the county "had surpluses in the fund." He said the gasoline tax alone amounted to Half a Million Dollars. He also said that the special tax of two cents per gallon which Harrison County is allowed to impose aggregated about $500,000 in 1956. Therefore, it must be accepted as a fact that the county has, and will have, ample available resources for payment of all maturing bonds and for the upkeep and maintenance of all foreseeable seawall functions after the transfer from the seawall account to the County Road and Bridge Fund, as ordered herein.

We think the case of Burdeaux, et al. v. Cowan, Dist. Atty., et al., 182 Miss. 621, 181 So. 852, decided June 13, 1938 (Suggestion of Error overruled July 21, 1938), decided the principles of the case at bar in favor of the petitioners herein. That case was between the same officials (though individually different in personnel), the same kind of proceeding, the same type funds, and the same object, as is the case at bar. The supervisors or-

dered the then clerk to transfer from the Road Protection Bond and Interest Sinking Fund to the County Road Fund the sum of $67,695.03. The clerk declined to do so unless ordered by a court of competent jurisdiction. The supervisors, acting through the district attorney, filed a petition for mandamus to require the clerk to make the transfer. The Court made this statement as to the facts in that case: "On the trial of the case it was agreed by the parties thereto that the net amount of automobile, road and bridge privilege tax, damages and temporary permits, reported to the Chancery Clerk, who is also clerk of the Board of Supervisors, and accounted to the auditor of the said county by the tax collector thereof for the year 1937, was $67,695.03, for which receipt warrants were issued; that the amount was deposited in the county depository, in the road protection bond and interest sinking fund of the county, which shows the sum now on hand to be $203,191.53 in cash. It was also agreed that the sum of $67,695.03 can be transferred without creating a deficiency in the said road protection bond and interest sinking fund; and that if the sum is transferred there will remain in such fund a sufficient amount to meet principal and interest of such bonds as they mature. It is further agreed that the taxes derived from the sale of gasoline averages approximately $25,000.00 each month in Harrison County; and also that the said sinking fund owns notes of the county in the sum of $350,000.00, issued under the authority of Chapter 274 of the Laws of 1936.

"Prior to the order transferring the funds from the sinking fund to the general county road fund, the Board of Supervisors requested an opinion from the Attorney General as to their authority so to do, and were advised by that office that such fund could be so transferred and used, provided it did not create a deficit in the funds collected under the provisions of Chapter 319, Laws of 1924, and that under the facts as stated, the funds should

have been paid into the county road fund, instead of the sinking fund.''

It is true that the Court undertook to reconcile Chapter 116, Laws of 1924, and Chapter 319, Laws of 1924, where a conflict existed between the two chapters, but the following statement by the Court is especially applicable in principle to the case at bar. ''It seems clear that the legislature did not intend, taking the two acts together, that funds collected under chapter 319, Laws of 1924, should be held to any further extent than was necessary to take care of the bonds issued, by paying the interest, and creating the necessary sinking fund for their retirement. Funds in excess of this requirement could lawfully be used in building or repairing or constructing roads and bridges of the county. The whole purpose of the two acts together is to provide for proper and adequate road facilities, and for the protection of such highway from devastation by the waters of the sound; and under the agreed statement of facts there are ample funds in the road protection fund, under Chapter 319, to meet all requirements of the law as to such bond issues. Chapter 116, to the extent that there is an unavoidable conflict, prevails over Chapter 319; but we do not think that it was the legislative intention, in counties bordering on the coast, with their tide waters, and storms, destructive of roads along the sound, to prevent issuance of road protection bonds which were to be provided for by taxes authorized by law. A reading of the provisions of Chapter 319, Laws of 1924, shows that any surplus funds derived therefrom, can and should be applied by the Board of Supervisors on the general county highway fund, giving preference, as provided in that act, to the state highways which have not been taken over by the state highway department.

''Taking the statutes together, with the facts above stated, we think it was proper to order the transfer of the funds, as directed by the court below.'' The Bur-

deaux case settles the principles involved to the time of its decision, and is decisive of the case at bar unless the Legislature, by proper enactment, has subsequently forbidden the transfer of the funds as herein ordered by the supervisors. We find no statute expressly, or by necessary implication, doing that. On the other hand, the subsequent statutes seem to enlarge, rather than narrow, the discretionary powers of the supervisors over such funds, always prohibiting, of course, the supervisors from taking any actions or doing anything which would in any manner impair payment of the outstanding bonds or render the county unable to maintain the seawall protection as contemplated by the statutes.

It is well also to have in mind that the ultimate purpose of the construction and maintenance of the seawall is the protection of the public roads and bridges in the counties bordering upon the Gulf of Mexico or the Mississippi Sound from damage and destruction from waters, high winds and storms of the Gulf. In other words, the ultimate object of the seawall fund and of the county road and bridge fund is the same—the construction, preservation, protection and maintenance of the roads and bridges of the county.

It is disclosed that Harrison County, bounded as it is by the shores of the Gulf of Mexico or the Mississippi Sound, has an unusually large number of rivers, bayous and streams over which must be maintained, at great cost, the roads and bridges of the county.

Affirmed.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.